JOHN VOORHEES, JEREMIAH LETTON, SCHONEY ACHLEY AND NICHO-
LAS LONGWORTH, PLAINTIFFS IN ERROR v. JAMES JACKSON, EX
DEM. THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK
OF THE UNITED STATES.

Ejectment for a tract of land commenced in 1831, which had been sold under the
foreign attachment laws of Ohio; the defendants in the ejectment being in possess-
ion under the defendant in the attachment. The judgment, in the common pleas of
Hamilton county, Ohio, in the attachment suit, was entered in 1808. The
writ of attachment was returnable to April 1807; and it recited that it had been
sufficiently testified to the court, that the defendant, not residing in the state, was
indebted to the plaintiff. The tract of land was attached, and returned with an
inventory and appraisement. The defendant having made default, auditors were
appointed; and at December term they made a report, finding due to the plaintiff
267 dollars. The court ordered the property to be sold by the auditors. At April
term 1808, they reported they had sold the premises for 170 dollars. The court,
on inspection, confirmed the sale. The auditors afterwards conveyed by deed,
to Samuel Foster and William Woodward, who on the same day, 28th of May 1808,
conveyed the premises to William Stanley, with covenant of seisin, power to sell
and general warranty, under whom the plaintiffs in the ejectment derived title.
The proceedings in the attachment were in conformity with the Ohio attachment
laws, in all particulars, except, 1. No affidavit, as required by the statute, was found
filed with the clerk : and the law provides that, if this is not done, the writ shall be
quashed, on motion. 2. Three months notice of the attachment is to be given in a
newspaper, and fifteen days notice is to be given by the auditors; which did not
appear to have been done. 3. The defendant is to be called three times preceding
judgment, and the defaults recorded. No record appeared to have been made.
4. Auditors are not to sell until twelve months, and it did not appear when the
sale was made. 5. The return of the sale shows a sale to Foster and Woodward,
and a deed was made to Stanley, and no connexion between them was shown in
the record.

By the Court. The several courts of common pleas of Ohio, at the time of these
proceedings, were courts of general civil jurisdiction; to which was added, by the
act of 1805, power to issue writs of attachment, and order a sale of the property
attached on certain conditions; no objection therefore can be made to their juris-
diction over the case, the cause of action or the property attached. The process
which they adopted was the same as prescribed by the law; they ordered a sale,
which was executed; and on the return thereof gave it their confirmation. This
was the judgment of a court of competent jurisdiction on all the acts preceding
the sale, affirming their validity, in the same manner as their judgment had affirm-
ed the existence of a debt. There is no principle of law better settled, than that
every act of a court of competent jurisdiction, shall be presumed to have been
rightly done till the contrary appears. This rule applies as well to every judgment
or decree rendered, in the various stages of their proceedings, from the initiation to
their completion; as to their adjudication that the plaintiff has a right of action,

VOL. X.—3 G

[Voorhees v. The Bank of the United States.]

Every matter adjudicated becomes a part of their record; which thenceforth proves itself, without referring to the evidence on which it has been adjudged.

That some sanctity should be given to judicial proceedings; some time limited, beyond which they should not be questioned; some protection afforded to those who purchase at sales by judicial process; and some definite rules established, by which property thus acquired may become transmissible, with security to the possessors: cannot be denied. In this country particularly, where property, which within a few years was but of little value, in a wilderness, is now the site of large and flourishing cities; its enjoyment should be at least as secure, as in that country where its value is less progressive.

It is among the elementary principles of the common law, that whoever would complain of the proceedings of a court, must do it in such time as not to injure his adversary by unnecessary delay in the assertion of his right. If he objects to the mode in which he is brought into court, he must do it before he submits to the process adopted. If the proceedings against him are not conducted according to the rules of law and the court, he must move to set them aside for irregularity: or, if there is any defect in the form or manner in which he is sued, he may assign those defects specially, and the court will not hold him answerable till such defects are remedied. But if he pleads to the action generally, all irregularity is waived; and the court can decide only on the rights of the parties to the subject matter of controversy: their judgment is conclusive, unless it appears on the record that the plaintiff has no title to the thing demanded, or that in rendering judgment they have erred in law. All defects in setting out a title, or in the evidence to prove it, are cured; as well as all irregularities which may have preceded the judgment.

So long as this judgment remains in force, it is in itself evidence of the right of the plaintiff to the thing adjudged, and gives him a right to process to execute the judgment: the errors of the court, however apparent, can be examined only by an appellate power: and by the laws of every country, a time is fixed for such examination, whether in rendering judgment, issuing execution, or enforcing it by process of sale or imprisonment. No rule can be more reasonable, than that the person who complains of an injury done him, should avail himself of his legal rights in a reasonable time, or that that time should be limited by law.

The line which separates error in judgment from the usurpation of power is very definite; and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case, it is a record importing absolute verity; in the other, mere waste paper: there can be no middle character assigned to judicial proceedings, which are irreversible for error. Such is their effect between the parties to the suit, and such are the immunities which the law affords to a plaintiff who has obtained an erroneous judgment or execution.

The cases of Blaine v. The Charles Carter, 4 Cranch 328, 2 Cond. Rep. 127; Wheaton v. Sexton, 4 Wheat. 506, 5 Cond. Rep. 119; Tolmie v. Thompson, 2 Peters 157; Elliott v. Piersol, 1 Peters 340; Wright et al. v. The Lessee of Hollingsworth, 1 Peters 169; Taylor v. Thompson, 5 Peters 370; The United States v. Arredondo, 6 Peters 729, cited.

IN error to the circuit court of the United States, for the district of Ohio.

The President and Directors of the Bank of the United States insti-

tuted an action of ejectment in 1831, for the recovery of a tract of land in the county of Hamilton, in the state of Ohio. On the trial of the case, in order to establish their title, they gave in evidence to the jury the proceedings in an attachment against Seth Cutter, in the county court of Hamilton county, commenced in 1807; under which the tract of land in the ejectment was sold, in 1808, and the sale returned by the auditors appointed by the court to make the same, on the 16th day of April 1808. The sale was confirmed by the court, at August term 1808; and, according to the provisions of the attachment law of the state of Ohio, the auditors had previously made a deed to William Woodward and William Foster, the purchasers of the property sold.

This deed was executed on the 28th day of May 1828, to Woodward & Foster, who on the same day conveyed the same to William Stanley.

The defendants in the ejectment claimed title to the premises, which were in their possession, under Seth Cutter. They insisted that the proceedings in attachment did not divest Seth Cutter of his title to the land: but the court instructed the jury otherwise. The jury gave a verdict in favour of the plaintiffs. To the judgment of the circuit court, on the verdict, the defendants below prosecuted this writ of error.

The record of the county court of Hamilton county, in the attachment against Seth Cutter, and the opinion of the circuit court upon the title derived under it, by the plaintiffs below, were brought up by a bill of exceptions. The whole proceedings in the attachment are stated fully in the opinion of the court.

The case was presented to this court, on printed arguments, by Mr Caswell, and Mr Chester, for the plaintiffs in error; and by Mr Fox, and Mr Chase, for the defendants. Mr Sergeant also delivered to the court a written argument, for the defendants in error.

The printed argument of the counsel for the plaintiff in error, presented for the consideration of the court, was as follows:

1. Were the proceedings in attachment sufficient to divest the title of Seth Cutter to the premises in dispute?

2. Was that title by such proceedings, and by the deed made, vested in Samuel Foster and William Woodward?

The plaintiffs in error hold the negative on both these points.

The powers of courts are of two kinds, ordinary and extraordinary. The first are those general powers of adjudicating between parties, the defendant being within reach of their process, upon matters within the general cognizance of the tribunals, as established by law. The constitution or laws establishing the respective courts of the union or the states, define, by marked boundaries, these general powers, as distributed to the different courts, and fix the limits of their respective jurisdictions. Within these boundaries their power is exercised according to their own discretion and judgment of the law, and their adjudications are conclusive upon the rights of the parties, unless the case be regularly brought under the review of an appellate tribunal.

The constitutions of judicial tribunals are to be carefully distinguished from those laws which are made for the enlarging, defining or circumscribing the rights and liabilities of individuals constituting the community, over which the powers of legislation are exercised. From the former, a court derives its existence, its mode of being, and the essential qualities of its nature. They confer upon it its powers, define its jurisdiction, and limit its capacity. In expounding these fundamental laws, in which its judges have, if not a personal, yet an official interest, it can claim no right to bind the conscience or control the judgment of any other tribunal, not subordinate, before which the question may arise, whether its construction and judgment were right or wrong. It must be resolved by looking at the law itself.

The extraordinary or special powers conferred upon courts are of the same nature. Relating like them to their own power and jurisdiction, they have no exclusive right to judge of them, so as to silence the judgment of other tribunals, not subordinate, when the question is whether the power exercised has been conferred. In other words, the exercise of a power by a court does not prove the rightful existence of the power. And when a special power is conferred to be exercised in a certain mode, it is equally competent for another tribunal to consider whether the power has been exercised in the mode prescribed; for, in such case, the mode is an ingredient essential to the power, constituting, indeed, a condition on which the power depends. In such case the act is binding, or nugatory, as it pursues the mode or is done in disregard of it. And the record, to bind the rights of the parties, must show that the power has been exercised in strict conformity to the mode prescribed. It is not sufficient that

the mode has been pursued in three out of four, or nine out of ten of its parts. It must be wholly pursued, to make the act valid. If twenty things are required by the law to be done by the court in exercising such special power, these being specially required, must not only be done, but specifically appear on the record to have been done. The omission of one is fatal; and a court, before which the adjudication shall be collaterally brought, cannot hold a right to be vested, or a title to be divested, by a record showing such an omission.

See Rose v. Himely, 2 Peters's Con. Rep. 100, 101, 102 : Griffith v. Frazier, 8 Cranch 9; 3 Johns. Cas. 108.; Rex v. Luke, 1 Cowper 26 (Lord Mansfield's opinion, p. 29); 1 Bur. 377; 4 Bur. 2244.

In Smith v. Rice, 11 Mass. Rep. 510, it is held, that although the court have jurisdiction of the subject matter, yet if the proceedings are not according to the course of the common law, and the statute be not strictly followed, the judgment is absolutely void, and vests no right. See also, Davol v. Davol, 13 Mass. Rep. 264.

The statute respecting attachments, in force at the time of these proceedings, will be found in 1 Chase's Stat. p. 462, passed in 1805. Section fifteen of this statute enacts:

" That the goods, chattels, lands, tenements, rights, credits, moneys and effects, of persons residing out of the state, shall be liable to be attached, taken, proceeded against, sold, assigned and transferred for the payment of their debts, in the same manner, as nearly as may be, as is herein provided, with respect to other debtors : provided, that instead of the oath or affirmation herein before provided, the applicant for such writ of attachment, his agent or attorney, shall make oath or affirmation that the defendant is not, at that time, resident within the state, as he verily believes ; and that the said defendant is justly indebted to him in a sum of money, specifying as nearly as he can the amount of his demand or balance : provided also, that no judgment shall be entered by virtue of this section, until notice for the space of three months shall be given in one of the newspapers published in this state, of the issuing of such attachment, and at whose suit, against whose estate, from what court the same issued ; and that unless the defendant in attachment shall appear, give special bail, and receive a declaration, judgment will be entered, and the estate so attached sold for the benefit of the creditors."

For the other provisions regulating foreign attachments we are.

referred to those parts of the statute relating to domestic attachments. The first section relates to the oath to be taken by the plaintiff, the substance of which is changed, in the section just quoted, to accommodate it to the case of a non-resident debtor. It provides before what officer the oath may be taken; that it shall be taken and filed with the clerk of the court; and that any writ of attachment issued before the oath or affirmation be so taken and filed, shall be quashed on motion. Sections two, three, four, five, six and seven relate to the mode of executing the writ, garnishees, costs, trying the right of property, &c. Section eight is in these words:

"The court, at the return of such writ of attachment, shall appoint three discreet persons to audit and adjust the accounts and the demands of the plaintiffs, and so many of the creditors of the defendant in attachment, as may have applied to the court, or shall apply to the auditors for that purpose, before they shall have closed their report, which report shall be made in writing, signed by the said auditors, or any two of them, and shall be returned to the court from which such writ of attachment issued, and at the third term, including the term to which the writ of attachment was returned, final judgment shall be entered on such report: provided, that the defendant shall have been called three times, at each of the said terms, and have made default, and those defaults shall have been entered by the clerk," &c.

Section eleven of this act is the last to which we deem it necessary to call the particular attention of the court. It authorizes the auditors, by virtue of an order from the court, to sell the lands and tenements, &c. attached: "provided, that notice of such sale shall be set up in writing, at three of the most public places within the county, at least, or be advertised in a newspaper, published in the county, for the space of fifteen days, at least, prior to such sale; nor shall any sale be made of such lands and tenements, in less than twelve calendar months, from the return of such writ of attachment," &c.

We will present at one view the requirements of the statute to which we ask the attention of the court.

1. The plaintiff must make and file an affidavit before any writ of attachment can issue.

2. This affidavit must state that the defendant is not resident within the state, as plaintiff believes.

3. An advertisement, minutely described in the statute, must be

published in some paper of the state, three months before any judgment can be rendered.

4. No judgment can be rendered against the defendant until the third term, and then only on the express condition, that at each of said terms, he shall have been three times called, and have made default, and those defaults shall have been entered by the clerk.

5. No sale of lands can be made by the auditors in less than twelve months from the return of the attachment.

6. The auditors are required to give at least fifteen days notice, by advertisement, of the sale.

None of these requirements of the statute appear to have been complied with. The clerk has certified that the transcript contains all the matters of record, or on file, in the cause. There is no affidavit or mention of an affidavit in the transcript. The court of common pleas had no jurisdiction of the matter until this was made and filed. The defendant was not within the jurisdiction of the court, or liable to its process, and his property could only be proceeded against and subjected to sale, upon the making of such an affidavit or affirmation as is prescribed in the statute. Any process, and all the proceedings founded upon process of attachment, are a nullity without this. There is no room here for presumptions. Where title depends upon a record, nothing is to be presumed which does not appear in the record. Proceedings of courts can be shown only by their records, and what the law requires to be recorded, cannot be presumed to exist, where the record does not show it. The writ issued recites, that whereas the plaintiff had sufficiently testified. In what manner he testified, whether by a verbal oath or assertion without oath, does not appear. It does appear that it was not in the manner required, for then the oath would have made a part of the record. And it is not recited in the writ, that he had even testified that the defendant was not then resident within the state. The clerk himself seems to say, that he was not a resident. The language is, "has sufficiently testified that Seth Cutter, who is not now a resident of the state."

We conceive that the want of this affidavit is fatal to all the subsequent proceedings, and that any judgment rendered in the cause was a nullity.

The next defect in the record is, that it does not appear that the attachment was advertised according to the statute. This was the mode required by the statute for perfecting service : it was necessary

to make Cutter a party to the cause to make the proceedings binding upon him. Without such a notice, his rights could not be affected by any judgment rendered in the cause. This matter is settled by the supreme court of Ohio, in Colwell, Adm. v. Bank of Steubenville, 2 Ohio Rep. 229, and in Taylor v. M'Donald, 4 Ohio Rep. 155, 156.

Chief Justice Marshall in the case of the Mary, 3 Peters's Cond. Rep. 312, says: " it is a principle of natural justice, of universal obligation, that before the rights of an individual be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him." The only mode in which implied notice could be given the defendant, in attachment, is by publication. No publication was made; no actual notice pretended: of course the party was not bound by the judgment, and his title to the land was not divested.

The court was authorized to give judgment at the third term, only on the express condition that, at each of the three terms, the defendant had been three times called, and had made default, and these defaults were entered by the clerk. At the first term he was regularly called and defaulted, according to the statute. At the second term there is no entry of calling, or a default. At the third term he was called, but whether once or more, does not appear. The court, in this state of the record, had no right or power to give judgment, and it is for this reason a nullity.

Twelve calendar months must, according to the terms of the statute, elapse after the return of the writ, before any sale could be made of the lands of the defendant. It does not appear, either from the return of the auditors, or their deed, when the sale was made. The order for sale, such as it was, was issued long before the expiration of the twelve months, and of course before the land was liable to sale. It is submitted, that the court could make no order of this kind before the end of the twelve months. They must wait until the land is liable to sale before they can order it to be sold. That order is in præsenti (not limited to a future time), to do that which there was no rightful authority to do. Such an order seems to us a nullity.

At least, if made within twelve months, it should appear not to have been executed till after their expiration.

The auditors are required to give at least fifteen days notice of the sale. This does not appear to have been done. It is not so stated in the deed. No proof of the fact is adduced. These auditors were

[Voorhees v. The Bank of the United States.]

not regular judicial or ministerial officers. They acted neither under the sanction of an oath of office, nor had they given any security to which the defendant could resort in case of injury. The power conferred must be strictly pursued. No presumptions can be made in their favour. That it would not be necessary, to sustain a title acquired under a sheriff's deed, to show that he had obeyed the law in the manner of making his sale, in every respect, may be admitted. But it by no means follows, that the same favour is to be shown towards a title claimed under the exercise of a special power, conferred on individuals. All the reasons are against it.

We have not thought it necessary to remark upon many things contained in this record, which, to say the least, appear to us singular. Whether the persons who adjusted the accounts against the defendants were auditors or referees, seems to be left in doubt. The nature of the claims against the defendant, by what evidence supported, or how ascertained, does not appear. The order to sell, issued to the auditors, does not appear. For aught that appears in the record, the sale was private, and without notice.

2. Admitting that the proceedings in attachment would have been otherwise sufficient to divest the title of Seth Cutter, the deed is not sufficient to vest that title in Samuel Foster and William Woodward. So far as we can conjecture from the return of the auditors, the land in question was sold to William Stanley. To him alone could the auditors convey. The return of the auditors is necessary to sustain the deed. Without this it cannot be pretended that the deed would be valid. The subsequent conveyance by Foster and Woodward to Stanley, does not alter the principle. They could convey no title which was not vested in them. If none was vested in them, none passed by their deed. It is not even shown or pretended, that Foster and Woodward were, by any act of Stanley, substituted in his place as purchasers. They stand entirely unconnected with the record. In the case of Den v. Lambert, 1 Green's New Jersey Rep. 182, this point is decided. There one individual was reported as the purchaser, and the deed was made to him and another. The question for the court was, whether such a deed vested any title. It was decided that it did not. If that was a correct decision, it is conclusive on this point.

It will probably be urged for the defendant in error, against the views we have presented of this case, that however erroneous the proceedings of the court of common pleas may have been, yet they

cannot be inquired into collaterally : that their judgment is binding, until reversed by an appellate tribunal.    This doctrine is true as to matters within the ordinary jurisdiction of courts, where the proceedings are according to the course of the common law.    But not so in this case.    The defendant was not within their jurisdiction.    He could only be affected through his property lying within that jurisdiction. The court could only take jurisdiction in a certain state of facts, which must be made to appear by an affidavit filed.    They could subject the property of the defendant only by a particular mode of proceeding.    He was not a party in court, and the plaintiff took judgment against him at his peril.    The purchaser was bound to inquire into the power of the persons acting as auditors, and the means by which the property was subjected to sale.    The whole record is necessary to support their title, and to the whole they should have looked.    The rights of the party could only be affected by strictly pursuing the law.    Colwell v. Bank of Steubenville; and Taylor v. M'Donald, before cited.

But in relation to inquiring into the regularity of these proceedings collaterally, the legislature of Ohio has settled the question, so far as legislative construction can settle it.

By the act of February 4th, 1813, 2 Chase's Stat. 795, sect. 6, reciting, that whereas it had been doubted, &c., and for removing such doubts, it was enacted: " that any person, in any suit or proceeding, founded upon, or in which it may be necessary to sh' w any such process," (in attachment) " proceeding or judgment, may be permitted collaterally to impeach the same, and to show any irregularity therein, or any deviation from the authority conveyed by the said fifty-third section, or by the above recited act" (the act allowing and regulating attachments).

If it be objected, that this act was passed after the title is claimed to have vested, the case of Watson et al. v. Mercer, 8 Peters's Rep. 88, is an answer to such objection.

It is true that this clause, in the act of 1813, was afterwards repealed, with the whole act.    But it cannot but be obvious that the reason why it was not re-enacted, was, that the reason given for passing it no longer existed; that the doubts in relation to the matter had ceased.

In Humphries v. Wood, Wright's Ohio Rep. 566, the court say: " these proceedings" (in attachment), being ex parte and in rem,

the statute must be strictly pursued, or no right is acquired under it ;" and the proceedings were declared to be void, not voidable.

In M'Daniel v. Sappington, Hardin's Ken. Rep. 94, the court hold that, the remedy by attachment being in derogation of the common law, the statute giving the remedy ought to be strictly pursued in all its provisions.

These are the reasons for our respectfully insisting that the circuit court erred in giving judgment, on the point reserved, for the plaintiff. And unless there be something in the name or essence of a court which makes its ex parte proceedings binding upon the rights of individuals, despite of all the provisions of a statute vesting it with whatever power it has over the subject matter—unless, because it is authorized to do one thing it may do all things—unless, because it has power to do a particular thing in a particular mode, it may do the same thing in any other mode, according to its own pleasure—unless it can secretly, by the aid of irresponsible agents, held to their duty neither by oath or obligation, dispose of the property of citizens of other states according to its uncontrolled will.; we think we may rightfully ask for the reversal of the judgment of the court below.

Mr Fox, with whom was Mr Chase, in their printed argument, argued for the defendants in error, as follows :

The objections urged below, and which we anticipate will be urged in this court against the validity of the proceedings in the attachment suit taken in the order in which they arise, as follows : First, because no affidavit of non-residence appears in the record ; second, because there is no evidence of the pendency of the suit having been advertised three months.; third, that the record does not show that the requisite defaults have been entered; fourth, that the deed ought not to have been made to Woodward and Foster, the sale having been made to Stanley.

As to the first objection, we say the statute does not require that the affidavit should be made a part of the record. All that is required by the law is the filing of the affidavit with the clerk. The affidavit ought certainly to be filed, but it is no more necessary that such affidavit should be recorded than that an affidavit to hold to bail, or the attorney's præcipe ordering a writ in a cause should be recorded, or that proof of such an affidavit having been made should appear in the record. Indeed in an ordinary suit the writ forms no necessary part of the record, unless required to be recorded by ex-

press statute. Until within a few years the writ is not to be found in the records of judicial proceedings in Ohio.

But in the present case the record does show that an affidavit was filed, for it is recited that the plaintiff "has sufficiently testified to the judges of our court of common pleas that Seth Cutter, who is not now residing in the state, is indebted," &c. Here it is shown that an affidavit had been made, and we presume that this recital must be held sufficient at this late period, even if the court should consider record evidence necessary to prove that an affidavit had been made. The next question arising in the cause, is whether it is essential that in an attachment suit, where the article seized is substituted for a personal service of process, the record must show that the proper advertisement of the pendency of the suit has been made.

We suppose it not necessary to the validity of the judgment, that any such advertisement should in fact be made, but at all events, we insist that no evidence of the fact of advertisement having been made need appear in the record.

We suppose in this as in all other proceedings in rem, the seizing of the property by virtue of process issued from a court having authority to issue the writ, vests in the tribunal from which the process issued a complete jurisdiction over the thing or property seized. If we are right in this position, it follows, we suppose, as a matter of course, that irregularities or errors in the subsequent proceedings of the court, can only be corrected by the courts of the state.

We insist that the issuing of the writ of attachment and seizing the real estate by virtue of that writ, gave to the court of common pleas of Hamilton county, complete jurisdiction of the property seized:

Because, First, the statute declares "that the property so attached shall be bound from the time of levying such attachment." Sec. 2d.

Secondly. Because the property from the time of attachment, is to "remain in the care and safe keeping of the office, to abide the judgment of the court." Sec. 3d.

Thirdly. Because at the return term of the writ, the court are authorized to refer the matters of account, &c., to the auditors to be adjusted. Sec. 8th.

Fourthly. Because the court are authorized to direct a sale of the personal property attached at any time after it is seized, if it be of a perishable nature. Sec. 11th.

Fifthly. Because the death of the defendant is not to abate the

[Voorhees v. The Bank of the United States.]

suit, but the right of the plaintiff is referred to the time of suing the attachment.

These acts could not be authorized to be done, unless upon the supposition, that the court by virtue of the seizure, had complete jurisdiction of the suit and of the parties thereto, so far as the disposition of the property attached was concerned.    This is also agreeable to the analogous proceedings in the courts of admiralty and exchequer.

In admiralty causes, it is a universal principle that the seizure of property by an officer acting under authority, vests the right in the sovereign, and authorizes his courts to proceed and inquire whether, under the laws, the property seized has been forfeited; and to adjudge to whom it belongs and how it shall be disposed of; and all sentences, judgments and decrees, affecting the property so seized, are conclusive upon all the world, as to the right and title to the thing seized from the time of seizure.    4 Cranch 278 ; 1 Paine's C. C. Rep. 626.    On the seizure of the property, the jurisdiction of the admiralty courts attaches, and the property is subject to the decision in the cause.    4 Cranch 296 ; 1 Phil. Ev. 273 ; 12 Serg. & Rawle 289 ; 1 Paine's Rep. 626 ; 3 Binney 220 ; 5 Cranch 184.

If then the court had jurisdiction of the cause, the omitting to publish the pendency of the writ, did not divest the court of its jurisdiction.    The court undoubtedly might have refused to have given judgment, and indeed ought not to have given judgment until the advertisement had been made, and we must suppose the court did require the evidence of such publication ; as we are not to presume the judges neglected, or erred in the discharge of their duties. But suppose the court did not require any proof of such publication having been made ; suppose that they were satisfied of its having been made from their own personal knowledge, such as their having read the notice in the newspaper, and admitting the court ought to have required other evidence of the fact: all that can be said in relation to the matter is, that the court erred, but the error of the court cannot affect the validity of the judgment.    The purchaser of property is not responsible for the errors of the court or of the parties.    Nor can the errors of the court of common pleas be inquired into by this court.    This court, so far as the judgment of the court of common pleas of Hamilton county is concerned, is a foreign court, and as such cannot notice the irregularities of the Hamilton county courts.    The regularity or irregularity of the proceedings of our own courts is an internal regulation

of the state of Ohio, and as such, must be expounded by the courts of the state. Foreign courts cannot notice the errors of state courts. 4 Cranch 294 ; 1 Paine's Rep. 621.

" Where judicial proceedings are merely irregular, the courts of the country pronouncing the sentence, are the exclusive judges of that irregularity, and their decision binds the world." 4 Cranch 278.

The case of Kempe's Lessee v. Kennedy, 5 Cranch 173, we conceive conclusive on this subject. In that case the court held that whether the inquest which was substituted for a verdict " did or did not show that an offence had been committed, was a question which the court in New Jersey was competent to decide. The judgment it gave is erroneous, but it is a judgment, and until reversed, cannot be disregarded." The same principle is recognized, 11 Mass. Rep. 229.

So in 12 Serg. & Rawle 289, it was held that money being attached in Louisiana, " the judgment of the courts there touching the disposition of that money was conclusive. The thing attached being in Louisiana was subject to the jurisdiction of her courts. By what law it was to be governed, " it was for the judges of those courts to decide ; and we presume they would decide by their own laws."

The third objection is, that the statute requires the defendant should be called for three successive terms and defaulted, and entries of such default entered of record, and that the record offered in evidence does not show that these defaults were entered This, like the other objections, is one which could only be taken advantage of by writ of error, which could only be prosecuted in the state court. It does not affect the validity of the judgment. There is no doubt the defendant ought to have been called three times, at three successive terms, and that an entry of such calling ought to have been made. But after admitting all this, the judgment still remains good until reversed. The plaintiffs in error, in order to sustain their objection, by their course of argument destroy all the well settled distinctions between void and erroneous judgments. The least irregularity ; the smallest error in the judgment of the courts, if sufficient to reverse the judgment in a superior court, is also sufficient, according to this view of the case, to render it null and void. If this judgment was a valid judgment until reversed or set aside by a superior tribunal in Ohio, it is binding and valid every where. And being a

[Voorhees v. The Bank of the United States.]

proceeding in rem, not against the person; the seizing of the property being tantamount to personal service in a personal action; the court had jurisdiction of the matter, and that is all the law requires to make the judgment valid.

The last objection, as we understand it, is, that the deed is not made to the person who was returned as the purchaser at the auditor's sale.

It is true, that the auditors returned that the land in question "was sold to William Stanley, for 170 dollars;" but this return is not conclusive on the purchase; the deed made to Woodward and Foster, is as strong evidence of the sale having been made to those persons, as the return to the court is of its having been made to Stanley. But we contend it is immaterial whether the sale was made to Stanley, or to Woodward and Foster. If the sale was to Stanley, he was equitably entitled to a deed for the property sold, and he was equitably entitled to direct the deed to be made to another. The statute does not require the auditors to make a deed to the purchaser. By the eleventh section they are authorized to sell and convey the lands. But to whom they are to make the deed is left to be decided by the principles of law and the agreement of the parties. The auditors, perhaps, could not be compelled to convey to an assignee of the purchaser, unless by the court of chancery; but if the purchaser requested the auditors to make the deed to Woodward and Foster, and the auditors did so, we do not perceive that the rights of Cutter were in any way affected by the arrangement. The equitable title to the lot was vested in Stanley by the purchase, and the right would have been enforced specifically by a court of equity, either on the application of Stanley (if he had parted with his interest), or of his assignee. The deed for Foster and Woodward shows that Stanley was satisfied with the doings of the auditors, or he would not have received a deed from Woodward and Foster. The latter made to Stanley a warranty deed, and both deeds bear date on the same day; it is evident, therefore, that Stanley, Woodward and Foster, the only persons interested in this matter, were perfectly agreed as to the manner of making the deeds; and as no law has been violated, we suppose the deeds are valid.

To these views of the matters in controversy, Mr Chase subjoined an argument, in which he contended :

1st. It appears from the record and the law, that the proceedings in attachment were had before a court of competent jurisdiction.

2d. That in the exercise of this jurisdiction, a judgment was rendered and an order made; in virtue of which the land in controversy was properly sold

3d. That the judgment and order so made, having never been reversed, remain valid and in full force; and cannot now be collaterally questioned.

He cited Kempe's Lessee v. Kennedy et al., 5 Cranch 173, 2 Peters's Cond. Rep. 223; 3 Peters's Cond. Rep. 312; Ohio Forms and Practice 126, 359; Hartshorn v. Wilson, 2 Ohio Rep. 28; 6 Ohio Rep. 268; 2 Chase's Statutes 712; 5 Ohio Rep. 500; 1 Chase's Statutes 163, 164, 683, 795, 972; 5 Ohio Rep. 500, per Hitchcock, chief judge; Allen's Lessee v. Parish, 3 Ohio Rep. 190; Ludlow's Heirs v. Wade, 5 Ohio Rep. 501: Ludlow's Heirs v. M'Bride, 3 Ohio Rep. 257; Ludlow's Heirs v. Johnston, 3 Ohio Rep. 561; Dabney v. Manning, 3 Ohio Rep. 325; Colwell v. Bank of Steubenville, 2 Ohio Rep. 229; Cowden v. Hurford, 4 Ohio Rep. 133; Taylor v. M'Donald, 4 Ohio Rep. 154; Humphrey v. Wood, Wright's Ohio Rep. 566.

Mr Sergeant, also for the defendants in error, argued in writing:

First, That the sale which is questioned in this case, was made in the year 1808, about twenty-eight years ago. It was made under a judgment of a court of competent jurisdiction, and in conformity to that judgment. The deed was duly acknowledged, and was recorded in June 1808. The judgment stands in full force, and unreversed.

The objections made after this great length of time are, that certain things required by law in the course of the proceedings, do *not appear* to have been closed. It is not proved that they were left undone. The question then is, whether a party, after more than a quarter of a century, is bound, affirmatively and positively, to prove, in support of his title, that not only the court, but every officer and every person employed by the court, did what the law required to be done; or else to lose his land.

In such a case, presumption stands in the place of proof. The court will presume every thing to have been rightly and regularly done. This is due to the tribunal. Its conclusions are presumptive evidence that the right steps have been taken. This presumption

[Voorhees v. The Bank of the United States.]

arises immediately : it is strengthened by time : and after so many years, is indispensable to justice. How is it possible now to prove affidavits or advertisements ?

2. The want of an affidavit is supposed to go to the jurisdiction of the court. If this were so, the plain answer would be, that it does not appear that there was no affidavit. The presumption is, that there was an affidavit ; and after so great a length of time it is irresistible and conclusive.

But this is not the law. By the first section of the act of Ohio it is provided, that.if the clerk issue a writ without an affidavit, " such writ shall be quashed on motion, at the proper cost of the clerk issuing the same." If there be no motion, then the writ cannot be quashed; and if the writ be not quashed, it remains in force, and so supports the jurisdiction. The writ cannot be invalidated in any other way than this. It is a good writ if it be not so invalidated. In this case, therefore, the writ is a good writ, and unimpeachable now, in this collateral action, even if it were certain there was no affidavit.

3. There are some remarks made in the argument as to the time of sale, not very exact ; nor, seemingly, much relied upon. It is only necessary, in order to dispose of these remarks, that the prohibition in the act, sect. 11, is limited specifically to the sale. The order of sale may be before the expiration of the year. The act seems to contemplate that it shall be at the time of giving judgment. The advertisement may be within the year; and if it announce a sale after the year, it is good.

Now, here, it does not appear that the sale was within the year. That would be enough. But the evidence is sufficient to show that it was after the year. The return of sale bears date the 16th of April, being eleven days after the end of the year. The reasonable presumption, according to the usual course of such business is, that this was the date of the sale, or as soon after as possible.

4. Upon the more general and very important question, whether these proceedings are examinable in a collateral suit, I wish to add a reference to the case of Thompson v. Tolmie, 2 Peters 157. The principles are there very fully and clearly stated; and that judgment is deemed to be decisive of the present case.

It will be perceived.that the counsel on both sides refer to cases in Massachusetts as maintaining contradictory docrines. They do seem to be opposed to each other. But in Heath v. Wells, 5 Pick. 140, the former cases are reviewed and reconciled. Where the proceed-

ings were held void, it was because there was wanting what was necessary to vest jurisdiction. The indispensable prerequisite did not exist.

Perhaps, too, the courts of Massachusetts were more liberal, because there was no opportunity of review by writ of error. It is not necessary to examine what weight ought in justice to be allowed to this consideration. Such motive for enlarging or relaxing the ordinary rule is not to be found in this case. Judgments in attachment were, and are examinable on error in Ohio.

And this leads to a remark upon the cases cited by the counsel of the plaintiff in error. They are all, without exception, (that in Wright's Ohio Rep. 566, included) writs of error. No instance of impeaching the proceedings collaterally, has been shown.

The distinction is a familiar one, and it is highly important.

Writs of error are limited in point of time. Collateral suits are almost without limitation.

Still more. Reversal of a judgment, on error, does not affect the title of a purchaser. The successful party does not go for the land, but for restitution of what was recovered from him by his adversary. The collateral suit seeks to recover the land, leaving the money in the hands of the adverse party, at the expense of the purchaser, who thus becomes the victim. The creditor gets his money, which is not unjust. The debtor is released without payment, and an innocent purchaser, invited by judicial proceedings, is made to pay. Duly encouraged, such a principle would soon lead to piratical adventures under colour of law.

Mr Caswell and Mr Chester; in reply to the argument of Mr Fox and Mr Chase; denied, that the proceeding by a foreign attachment, under the laws of Ohio, was a proceeding in rem. They argued that a foreign attachment is a proceeding against a debtor for the recovery of a debt due to the plaintiff in attachment. The debt does not grow out of the property attached; there is no offence committed or duty neglected in regard to it, to form the basis of the proceeding. The particular property seized is not in default: no offence has been committed by means of it, or in relation to it: there is no debt constituting a lien upon it; or in other words, it is not itself a debtor. No question is agitated or put in issue in relation to the property. The issue to be tried, if an issue be made up, is whether the person

defendant is debtor, and the amount of the debt; and whether he is non-resident so as to be within the provisions of the statute.

There is nothing in this proceeding in common with proceedings in rem.

In answer to the position, that if the common pleas of Hamilton county had jurisdiction of the attachment suit, this court cannot look at their proceedings, it was urged, that the power delegated by a statute can be exercised in no other mode than that pointed out by the statute, and no presumption in favour of proceedings in a foreign attachment will be sustained, where the purchaser under them was never in possession, and where suit is brought after the lapse of twenty years.

They denied the arguments on the cases cited by the counsel for the defendants in error; and also the construction of the statute of Kentucky relative to sales made by administrators.

In conclusion, they stated:

We trust we have satisfactorily shown that the grounds assumed by the defendants in error are not tenable; and that they are not sustained by the authorities cited in support of their positions.

Especially we think it is manifest both from authority and upon principle, that a general jurisdiction of a class of cases, coming under one general head, does not necessarily give or infer a jurisdiction over every particular case, or an unlimited power in relation to each case. See Bank of Hamilton v. Dudley's Lessee, 2 Peters 492, particularly pages 523, 524. That a power, even in a court, to do an act in a particular mode, does not give the power to do the act in any other mode. That when there is a power or jurisdiction, upon the condition of something being first done, the record must show that the thing required was done. That when, by the legislative act giving power over the subject matter, the court is prohibited from rendering judgment until certain pre-requisites have been complied with, the judgment is not merely voidable, but a nullity, unless these pre-requisites, being matters proper for the record, shall, by the record, appear to have been performed: most certainly is this the case, if the statute expressly prohibit any final action or judgment, until after these shall have been placed on the record. We think we have shown that a foreign attachment is not such a proceeding in rem, as comes within the principles laid down by admiralty courts, in relation to parties and notice in such proceedings; that in all ex parte proceedings, where there has been no actual no-

tice to the person interested, he may avail himself collaterally of every advantage which he would have on a writ of error, for error in law; that where a statute requires notice or service of any kind, upon one who is to be thereby made a party to a suit, he is not bound, nor his property divested by any proceedings or judgment, unless such notice or service be shown, or may clearly be inferred from the record; that a jurisdiction or power is not acquired over the rights of a person, who is without the jurisdiction of the court and of the state, merely by the issuing of a writ against his property, without a compliance with any of those essential requisites on which, by the statute, the right and power of the court first to entertain the cause, and afterwards to proceed in it to judgment, depends; and finally, that in all ex parte proceedings, the plaintiff takes judgment at his peril, and purchasers must, at their peril, look to the whole record of the cause.

And if these, or any of these propositions be sound, then we have certainly brought our case within it, and are entitled to a reversal of the judgment below; for we have shown:

1. That by the statute the plaintiff must make and file an affidavit before any writ could issue; and no such affidavit was made or filed. (The defendant's counsel err when they say such an affidavit makes no part of the record.)

2. That this affidavit must state, that the defendant is not resident within the state, as plaintiff believes. No such affidavit was made or alluded to, or any intimation given that such a thing was testified to.

3. That to give notice to the defendant, an advertisement, the substance of which is prescribed in the statute, must have been published in some paper of the state, for three months before the court was vested with any power to give judgment, and no such notice is mentioned in the record; and there is nothing in or out of the record from which it can be inferred.

4. That no judgment could be rendered against the defendant until after three callings at each of three terms of the court, and three defaults entered on the record by the clerk; and that the power to give a valid judgment depended on this as a condition precedent. The callings and the defaults do not appear as required.

5. That no power to sell the land in question, and of course no power to order the sale of the land, existed till after the lapse of twelve months from the return of the attachment; and the order

[Voorhees v. The Bank of the United States.]

was issued long before the lapse of the twelve months; and there is no evidence that the auditors waited for the expiration of the time, or when, or where, or how they sold.

6. That the auditors were required to give at least fifteen days notice, by advertisement, of the sale; and it is not shown or pretended, either by the deed or otherwise, that such an advertisement was made; and,

7. That the return shows a sale to one man, and a conveyance made to others not in any mode connected with the record.

From the time of the sale to the present day, the defendant in attachment, and those claiming under him, have been in the undisturbed possession of the land, now at this late day brought into dispute; and viewing the decisions of the state courts, and the principles of law as we do, we most cheerfully unite in the sentiment and opinion so happily expressed by the defendant's counsel: "that the judgment of this court will accord with the course of decisions in the state courts, and will tend not to impair, but to establish confidence; not to excite, but to repress the spirit of speculation in litigation; not to destroy, but to fortify the security of titles."

Mr Justice BALDWIN delivered the opinion of the Court.

This case comes up by a writ of error from the circuit court for the district of Ohio, to reverse a judgment in an action of ejectment, obtained by the defendants against the plaintiffs in error. The sole question in the court below, was the validity of a sale of the premises in controversy, under a judgment of the court of common pleas of Hamilton county, Ohio, in a case of foreign attachment, rendered against Seth Cutter in 1808 at the suit of Samuel Foster. By the record in that case it appears, that the writ was returnable to April term 1807. It recited that the plaintiff had sufficiently testified to the judges, that the defendant, who is not residing in the state, is indebted to the plaintiff, &c. The sheriff returned the writ, with an inventory of the property attached by him; in which was included the property in question, with an appraisement thereof. At the April term the defendant was three times called and made default; whereupon the court appointed auditors to report at August term following: the order was then continued till December term, when the auditors made a report, finding a debt of 267 dollars due the plaintiff. The court then rendered judgment on the report, and ordered the property attached to be sold agreeably to law. An order of sale

was accordingly issued to the auditors, who at the April term 1808, to wit on the 16th of April, reported that they had sold the premises to William Stanley for 170 dollars ; on an inspection of which the court granted judgment of confirmation thereof. On the 28th of May 1808 the auditors made a deed to Samuel Foster and William Woodward, who on the same day conveyed the same to William Stanley ; under whom the lessors of the plaintiff claimed by sundry mesne conveyances.

The consideration of the deed from the auditors to Foster and Woodward was 170 dollars, the same as from them to Stanley; but they gave in their deed a covenant of seisin, of power to sell, and general warranty. The defendants were in possession, claiming title under Seth Cutter, the defendant in the attachment, as whose property the land was sold. The case has been submitted on printed arguments; which present a full and able view and discussion of the points arising in the cause.

On comparing the record of the proceedings on the attachment, with the provisions of the act of 1805, Chase's Ohio Laws, 462, &c., the acts of the court in all the course of the cause appear to be in conformity therewith, except in the following particulars, on which the objections to the validity of the sale are founded :

1. By the first section it provides that an affidavit shall be made and filed with the clerk before the writ issues, and if this is not done the writ shall be quashed, on motion: no such affidavit is found in the record.

2. The fifteenth section directs three months notice to be given by publication in a newspaper, of the issuing of the attachment, before judgment shall be entered; the eleventh section also prescribes, that fifteen days notice of sale shall be given by the auditors : neither of. which appears by the record to have been done.

3. By the proviso to the eighth section, the defendant must be three times called, at each of the three terms preceding judgment, and make default, which defaults shall be recorded by the clerk : no entry is made of such default at the December term 1807.

4. By the eleventh section, the auditors are prohibited from selling till the expiration of twelve months from the return of the writ: whereas the order issued before ; and it does not appear when the sale was made.

5. The return of the sale by the auditors, shows a sale to one

person, and a deed to others; not in any mode connected with the record.

There is no provision in the law, that if the several acts therein directed to be done are omitted, the sale or any other proceedings under the attachment shall be deemed void: but by the thirteenth section it is declared, that every sale and conveyance, made by the said auditors, or any two of them, by virtue of the authority herein granted, shall be as binding and effectual, as if the same had been made by the said defendant, prior to the service of the said attachment.

It is contended by the counsel for the plaintiffs in error, that all the requisitions of the law are conditions precedent; which must not only be performed before the power of the court to order a sale, or the auditors to execute it, can arise; but that such performance must appear on the record.

The first part of this proposition is the true meaning of the law of Ohio: the various acts required to be done previous to a sale are prescribed by a *proviso*, which in deeds and laws is a limitation or exception to a grant made or authority conferred; the effect of which is to declare, that the one shall not operate, or the other be exercised, unless in the case provided.

By the eleventh section, the auditors are directed, by virtue of an order of the court, to *sell* and *convey* the lands attached, provided they give notice : notice then is the condition, on the performance of which their duty and power depend; and the act must be done to make the execution of the power consistent with the law.

But the provisions of the law do not prescribe what shall be deemed evidence that such acts have been done, or direct that their performance shall appear on the record. The thirteenth section, which gives to the conveyance of the auditors the same effect as a deed from the defendant in the attachment; contains no other limitation than that it shall be " in virtue of the authority herein granted."

This leaves the question open to the application of those general principles of law, by which the validity of sales made under judicial process must be tested ; in the ascertainment of which, we do not think it necessary to examine the record in the attachment, for evidence that the acts alleged to have been omitted appear therein to have been done. Assuming the contrary to be the case, the merits of the present controversy are narrowed to the single question, whether this omission invalidates the sale. The several courts of com-

[Voorhees v. The Bank of the United States.]

mon pleas of Ohio, at the time of these proceedings, were courts of general civil jurisdiction; to which was added, by the act of 1805, power to issue writs of attachments, and order a sale of the property attached on certain conditions: no objection therefore can be made to their jurisdiction over the case, the cause of action, or the property attached. The process which they adopted, was the same as prescribed by the law; they ordered a sale which was executed, and on the return thereof gave it their confirmation. This was the judgment of a court of competent jurisdiction on all the acts preceding the sale, affirming their validity in the same manner, as their judgment had affirmed the existence of a debt. There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears: this rule applies as well to every judgment or decree, rendered in the various stages of their proceedings from the initiation to their completion, as to their adjudication that the plaintiff has a right of action. Every matter adjudicated, becomes a part of their record; which thenceforth proves itself, without referring to the evidence on which it has been adjudged.

In this case the court issued an order of sale agreeably to law, which having been returned by the auditors, and "being inspected, the court grant judgment of confirmation thereon." It is therefore a direct adjudication, that the order of sale was executed according to law. They had undoubted authority to render such a judgment; and there is nothing on the record to show that it was not rightfully exercised. If the defendants' objections can be sustained, it will be on the ground that this judgment is false; and that the order of sale was not executed according to law, because the evidence of its execution is not of record. The same reason would equally apply to the non-residence of the defendant within the state, the existence of a debt due the plaintiff, or any other creditor, which is the basis on which the whole proceedings rest. The auditors are equally silent on the evidence, upon which they reported that debts were due by the defendant, as on the evidence of notice and due publication; but no one could pretend that the judgment that the debts reported were due, shall be presumed to be false. Though the able and ingenious argument of the defendants has not been directed at this part of the judgment of the court of common pleas; the grounds of objection are broad enough to embrace it: for in resting their case on the only position which the record leaves them, they necessarily affirm the

[Voorhees v. The Bank of the United States.]

general proposition, that a sale by order of a court of competent jurisdiction, may be declared a nullity in a collateral action, if their record does not show affirmatively, the evidence of a compliance with the terms prescribed by law in making such sale. We cannot hesitate in giving a distinct and unqualified negative to this proposition, both on principle, and authority too well and long settled to be questioned.

That some sanctity should be given to judicial proceedings; some time limited, beyond which they should not be questioned; some protection afforded to those who purchase at sales by judicial process; and some definite rules be established, by which property thus acquired may become transmissible, with security to the possessors: cannot be denied. In this country particularly, where property, which within a few years was but of little value, in a wilderness, is now the site of large and flourishing cities: its enjoyment should be at least as secure, as in that country where its value is less progressive.

It is among the elementary principles of the common law, that whoever would complain of the proceedings of a court, must do it in such time as not to injure his adversary by unnecessary delay in the assertion of his right. If he objects to the mode in which he is brought into court, he must do it before he submits to the process adopted. If the proceedings against him are not conducted according to the rules of law and the court, he must move to set them aside for irregularity: or, if there is any defect in the form or manner in which he is sued, he may assign those defects specially, and the court will not hold him answerable till such defects are remedied. But if he pleads to the action generally, all irregularity is waived, and the court can decide only on the rights of the parties to the subject matter of controversy: their judgment is conclusive, unless it appears on the record that the plaintiff has no title to the thing demanded, or that in rendering judgment they have erred in law: all defects in setting out a title, or in the evidence to prove it, are cured, as well as all irregularities which may have preceded the judgment.

So long as this judgment remains in force, it is in itself evidence of the right of the plaintiff to the thing adjudged, and gives him a right to process to execute the judgment: the errors of the court, however apparent, can be examined only by an appellate power; and by the laws of every country a time is fixed for such examination, whether in rendering judgment, issuing execution, or enforcing it

VOL. X.—3 K

by process of sale or imprisonment. No rule can be more reasonable, than that the person who complains of an injury done him, should avail himself of his legal rights in a reasonable time, or that that time should be limited by law.

This has wisely been done by acts of limitation on writs of error and appeals: if that time elapses, common justice requires, that what a defendant cannot do directly in the mode pointed out by law, he shall not be permitted to do collaterally by evasion.

A judgment or execution irreversible by a superior court, cannot be declared a nullity by any authority of law, if it has been rendered by a court of competent jurisdiction of the parties the subject matter, with authority to use the process it has issued : it must remain the only test of the respective rights of the parties to it. If the validity of a sale under its process can be questioned for any irregularity preceding the judgment, the court which assumes such power places itself in the position of that which rendered it, and deprives it of all power of regulating its own practice or modes of proceeding in the progress of a cause to judgment. If after its rendition it is declared void for any matter which can be assigned for error only on a writ of error or appeal; then such court not only usurps the jurisdiction of an appellate court, but collaterally nullifies what such court is prohibited by express statute law from even reversing.

If the principle once prevails, that any proceeding of a court of competent jurisdiction can be declared to be a nullity by any court, after a writ of error or appeal is barred by limitation, every county court, or justice of the peace in the union, may exercise the same right, from which our own judgments or process would not be exempted. The only difference in this respect between this and any other court is, that no court can revise our proceedings; but that difference disappears, after the time prescribed for a writ of error or appeal to revise those of an inferior court of the United States or of any state; they stand on the same footing in law. The errors of the court do not impair their validity : binding till reversed, any objection to their full effect, must go to the authority under which they have been conducted. If not warranted by the constitution or law of the land, our most solemn proceedings can confer no right which is denied to any judicial act under colour of law, which can properly be deemed to have been done *coram non judice;* that is, by persons assuming the judicial function in the given case without lawful authority.

The line which separates error in judgment from the usun on

of power is very definite; and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, cr may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case, it is a record importing absolute verity; in the other, mere waste pape : there can be no middle character assigned to judicial proceedings, which are irreversible for error. Such is their effect between the parties to the suit; and such are the immunities which the law affords to a plaintiff who has obtained an erroneous judgment or execution. It would be a well merited reproach to our jurisprudence, if an innocent purchaser, no party to the suit, who had paid his money on the faith of an order of a court; should not have the same protection under an erroneous proceeding, as the party who derived the benefit accruing from it. A purchaser under judicial process, pays the plaintiff his demand on the property sold: to the extent of the purchase money, he discharges the defendant from his adjudged obligation. Time has given an inviolable sanctity to every act of the court preceding the sale, which precludes the defendant from controverting the absolute right of the plaintiff to the full benefit of his judgment; and it shall not be permitted that the purchaser shall be answerable for defects in the record, from the consequence of which the plaintiff is absolved. Such flagrant injustice is imputable neither to the common or statute law of the land. If a judgment is reversed for error, it is a settled principle of the common law coeval with its existence, that the defendant shall have restitution only of the money; the purchaser shall hold the property sold; and there are few, if any states in the union who have not consecrated this principle by statute.

This great rule, established for the protection of purchasers on the faith of judicial process, will be utterly prostrated; encouragement will be given to defendants in judgments, their heirs and privies, to take advantage of the security into which honest purchasers have been lulled; if any judicial proceeding which could stand the test of a writ of error, or appeal, if taken in time, or had become irreversible directly, could be avoided collaterally.

Acts of limitation become useless if a defendant is allowed to evade them by avoiding judgments or executions, on the suggestion of defects or omissions in the record, which can be reviewed only by an appellate court: a direct premium is held out for delaying the resort to the mode pointed out by law for correcting the errors of judicial

proceedings.   His debt is paid by the purchaser; the property purchased is restored to the defendant without any obligation to refund; and that which was, when sold, of little value, and bought at its full price paid to the defendant's use, becomes his rightful estate, when the remote out lot has become a mart for commerce, and covered with valuable improvements.   Had he brought his writ of error in time, and reversed the judgment or execution on which it was sold, justice would have been done him by a restitution of the purchase money; and to the purchaser, by leaving him in the quiet enjoyment of the property purchased.   Such are the consequences of the doctrines contended for by the defendants' counsel, in their objections to the proceedings on the attachment: none of them affect the jurisdiction of the court, or its authority to order or confirm the sale: the acts omitted to be noticed on the record are not judicial, but ministerial, to be performed by the clerk, or auditors.   It was a good ground for a motion to quash, or suspend the proceedings for irregularity, if they had not been done in fact: and as the judgment was by default, perhaps the omission to state them on the record may have been good cause for reversal on a writ of error.   But o.. an inspection of these proceedings collaterally, we can judicially see only what the court has done; not whether they have proceeded *inverso ordine*, erroneously, according to the proof before them, or what they have omitted, or ought to have done.   They have adjudged that the order of sale was executed agreeably to law: nothing appears on the record to impugn their judgment; it must, therefore, be taken to be true in fact, and valid in law.   Their order of sale was a lawful authority to the auditors to sell: it was a full justification to them in obeying it: it was executed in virtue of the authority granted by the law to the court, who have not exceeded their jurisdiction: and the deed of the auditors passed the title to the premises in controversy to the purchaser.

It has not been thought necessary to review the various cases cited in the argument: the principles which must govern this and all other sales by judicial process, are general ones adopted for the security of titles, the repose of possession, and the enjoyment of property by innocent purchasers, who are the favourites of the law in every court, and by every code.   Nor shall we refer to the decisions of state courts, or the adjudged cases in the books of the common law: our own repeated and uniform decisions cover the whole case; in its most expanded view; and the highest considerations call upon us so to re-

affirm them, that all questions such as have arisen in this cause may be put at rest in this and the circuit courts. In Blaine v. The Charles Carter, a ship had been sold under executions issued within ten days after judgment, contrary to the express prohibition of the twenty-third section of the judiciary act ; but no writ of error was taken out. The court declared, that if the executions were irregular, " the court from which they issued ought to have been moved to set them aside. They were not void, because the marshal could have justified under them ; and if voidable, the proper means of destroying their efficacy had not been pursued." The decree of the circuit court was affirmed, and the money ordered to be paid over to the execution creditor. 4 Cranch 328, 333.

In Wheaton v. Sexton, the case turned on the validity of the sale of real estate by the marshal of this district, by virtue of an excution, in which the language of this court is : " the purchaser depends on the judgment, the levy and the deed. All other questions are between the parties to the judgment, and the marshal. Whether the marshal sells before, or after the return ; whether he makes a correct return or any return at all to the writ ; is immaterial to the purchaser: provided the writ was duly issued, and the levy made before the return." 4 Wheat. 506.

In Tolmie v. Thompson, there had been a sale under an order of the orphan's court of this district, which had been confirmed by them; and a deed made to the purchaser, the validity of which was questioned, on objections similar to those now under consideration. The court say : " those proceedings were brought before the court collaterally, and are by no means subject to all the exceptions which might be taken on a direct appeal. They may well be considered judicial proceedings : they were commenced in a court of justice ; carried on under the supervising power of the court, and to receive its final ratification. The general and well settled rule of law in such cases is, that when the proceedings are collaterally drawn in question, and it appears on the face of them that the subject matter was within the jurisdiction of the court, they are voidable only. The errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same court to set them aside, or in an appellate court. If there is a total want of jurisdiction, the proceedings are void and a mere nullity, and confer no right, and afford no justification ; and may be rejected when collaterally drawn in question."

The purchaser is not bound to look beyond the decree when exe-

cuted by a conveyance, if the facts necessary to give jurisdiction appear on the face of the proceedings ; nor to look further back than the order of the court. " If the jurisdiction was improvidently exercised, or in a manner not warranted by the evidence before it, it is not to be corrected at the expense of the purchaser; who had a right to rely upon the order of the court, as an authority emanating from a competent jurisdiction." 2 Peters 163, 168. " When a court has jurisdiction, it has a right to decide every question that arises in the cause ; and whether the decision be correct or not, its judgment until reversed is regarded as binding in every other court." Elliott v. Piersol, 1 Peters 340 ; 2 Peters 169.

In Taylor v. Thompson, this court affirmed a principle of the common law ; that the sale of a term of years under a fieri facias, issued after and while the defendant was in execution under a ca. sa. on the same judgment, was good when made to a stranger to the execution. 5 Peters 370.

In the United States v. Arredondo, it was laid down as an universal principle, that when power or jurisdiction is delegated to any public officer or tribunal over a subject matter, and its exercise is confided to his or their discretion ; the acts so done are valid and binding as to the subject matter; and individual rights will not be disturbed collaterally, for any thing done in the exercise of that discretion within the authority and power conferred. The only questions which can arise, between an individual claiming a right under the acts done ; and the public, or any person denying their validity; are power in the officer, and fraud in the party. All other questions are settled by the decision made, or the act done by the tribunal or officer ; unless an appeal or other revision of their proceedings is prescribed by law. 6 Peters 729, 730.

These are rules of property which have been established so far as the authority of this court can do it : they apply to and must govern this case on the broad principles laid down ; and none of them come into collision with any construction given to the laws of Ohio, prescribing the mode of transferring real estate by judicial process. On the broadest ground, therefore, which has been taken in any of the specified objections to the proceedings of the court of common pleas in the attachment suit; we are most clearly of opinion, that none of them can be sustained, without the violation of principles which ought to remain inviolable.

The remaining objection is, that the auditors did not make their

[Voorhees v. The Bank of the United States.]

deed to the person who purchased at the sale under the order of the court. This is a matter entirely between such person and those to whom the deed was made : to Cutter, it is immaterial to whom the conveyance was made ; his right was extinguished by the sale and confirmation. It is equally immaterial to those who claim under Cutter, who received the deed ; Stanley, the purchaser, or Foster, the plaintiff : it was a matter between themselves, which can have no effect on the validity of the sale, were it unexplained. But connecting the record with the deeds, their inspection removes the objection, for the reasons stated in the argument of counsel. Samuel Foster was the principal creditor, and plaintiff in the suit ; Stanley purchased, but took his deed from Foster and Woodward, with their covenants of seisin, warranty and title : had he taken a deed directly from the auditors, it must have been without any covenants. The object was evidently to have an assurance of the title : for both deeds were executed and acknowledged on the same day, and the consideration of both was the same.

The judgment of the circuit court is affirmed.


This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Ohio, and was argued by counsel ; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed with costs.