962 F.2d 1402
 In re SAN VICENTE MEDICAL PARTNERS LTD., Debtor.
SECURITIES & EXCHANGE COMMISSION, Plaintiff,
v.
AMERICAN PRINCIPALS HOLDING, INC., Defendant.
SAN VICENTE MEDICAL PARTNERS, LTD.,
Debtor-in-Possession-Cross-Claimant-Appellant,
v.
Ashley S. ORR, Receiver of American Principals Corporation,
a California corporation, Receiver-Cross-Defendant-Appellee.
 No. 90-55834.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 13, 1991.
Decided May 4, 1992.
 
 Christopher M. Laquer, Jett & Laquer, Pasadena, Cal., for appellant.
 Ruben Brooks, Page, Polin, Busch & Boatwright, San Diego, Cal., for appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before: BEEZER, HALL, and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 OVERVIEW
 
 1
 San Vicente Medical Partners, Ltd. (San Vicente) appeals a district court order awarding administrative fees to Ashley Orr. San Vicente is a limited partnership, and Orr is the receiver for San Vicente's former general partner American Principals Corporation (APC), a subsidiary of American Principals Holding, Inc. (APHI). Orr was appointed by the district court to act as receiver for APHI, its subsidiaries, and the various limited partnerships controlled by the subsidiaries. After a bench trial, the district court concluded that San Vicente was included in the APHI receivership and that Orr was entitled to recover a portion of his expenses from San Vicente. We affirm the judgment of the district court.
 
 BACKGROUND
 
 2
 In 1984, the Securities and Exchange Commission (SEC) initiated an action against APHI alleging securities law violations. APHI was the only named defendant in the SEC action. On June 26, 1984, the district court appointed Ashley Orr receiver for APHI upon application of the SEC. The district court's order stated generally that Orr would be receiver for "all funds, assets, choses in action and other property belonging to, or in the possession or control of, defendant [APHI] and its subsidiaries...."
 
 
 3
 APHI was a corporation based in San Diego that syndicated investment partnerships. At the time of the SEC action, APHI and its subsidiaries acted as general partner or trustee to eighty-two limited partnerships and trusts. One of the limited partnerships was San Vicente, formed for the purpose of developing, constructing, and operating a medical office building in Los Angeles. San Vicente's general partner was APC, an APHI subsidiary. The district court's receivership order does not specifically name the APHI limited partnerships; however, it is clear that the district court intended to include as part of the receivership all property that was under the control of APHI. At the time of the receivership order, the APHI partnership network was in complete disarray, and there was an urgent need to provide management for the partnerships controlled by APHI.
 
 
 4
 As receiver, Orr took control of the limited partnerships under the APHI umbrella, and he actively managed and completed the construction of San Vicente's office building. On June 14, 1985, the district court "spun-off" certain limited partnerships, including San Vicente, from the receivership estate. San Vicente Real Estate Corp., consisting of certain San Vicente limited partners, became San Vicente's general partner.
 
 
 5
 On February 14, 1986, San Vicente filed a Chapter 11 bankruptcy petition in the Southern District of California. Within San Vicente's bankruptcy, Orr filed a claim for administrative expenses incurred as receiver for San Vicente. Subsequently, Orr and San Vicente stipulated that Orr's claim for administrative expenses would be heard and decided by Judge Nielsen, the district court judge who had created the APHI receivership. The matter was first referred to a magistrate, who concluded that Orr was entitled to receivership expenses from San Vicente. San Vicente appealed, and this court reversed, finding that the magistrate lacked jurisdiction because the parties had not consented to a trial before a magistrate. In re San Vicente Medical Partners, 865 F.2d 1128, 1130-31 (9th Cir.1989). The case was then transferred to the district court for a new hearing. Id. at 1131.
 
 
 6
 On June 29, 1989, the district court held a bench trial on Orr's application for receivership costs and expenses. The court first concluded that San Vicente was part of the APHI receivership and was responsible for a share of Orr's expenses. The court noted that most of the limited partnerships had paid shares of the receivership expenses and that allowing San Vicente to avoid unallocated receivership expenses would result in a "disproportionate" and "totally unfair" burden on the other partnerships.
 
 
 7
 The district court then concluded that Orr was San Vicente's superseded custodian under the Bankruptcy Code and was therefore entitled to compensation for reasonable expenses. Based on an analysis of Orr's work with San Vicente, the court determined that Orr was entitled to expenses of $307,477.09.[1] San Vicente appeals this decision.
 
 DISCUSSION
 
 8
 San Vicente argues that it is not legally responsible for any portion of the receivership expenses because it was never part of the APHI receivership. In reviewing this argument, we must consider two issues. First, we must determine whether the district court's original receivership order incorporates the funds and assets of San Vicente. Second, because San Vicente was not a party to the SEC action, we must determine whether the district court had the power to include San Vicente's property in the APHI receivership. In the alternative, San Vicente raises a third issue. Even if San Vicente is responsible for receivership expenses, San Vicente asserts that the district court erred because the receivership expenses are unreasonable. We address these three arguments in turn.
 
 I. The Receivership Order
 
 9
 San Vicente's first argument--that the district court never included its property in the receivership--is easily dismissed. In the proceedings below, the district court found that it had included San Vicente's property in the receivership. Whether the district court included San Vicente's property in the receivership estate is a question of fact, and we review the district court's findings on this issue for clear error. Fed.R.Civ.P. 52(a); Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989) (findings of fact are reviewed under the clearly erroneous standard), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).
 
 
 10
 The district court's June 26, 1984 receivership order provided that Orr would act as receiver for "all funds, assets, choses in action and other property belonging to, or in the possession or control of, defendant [APHI] and its subsidiaries...." The order did not name the APHI controlled limited partnerships generally or San Vicente specifically. However, the receivership did include all assets and property controlled by APHI and its subsidiaries. APC, an APHI subsidiary, controlled San Vicente as its general partner. Therefore, the receivership order incorporates the funds and assets of San Vicente in the APHI receivership estate.
 
 
 11
 Moreover, it is clear that the district court intended to bring the property of the limited partnerships into the APHI receivership. The individual partnerships managed by APHI and its subsidiaries were burdened with massive administrative, legal, and accounting problems which needed immediate attention. The district court determined that a receiver was necessary to manage not only APHI and its subsidiaries but also the individual partnerships that had been left in a state of complete disorder. The court also authorized the receiver to make payments from the funds and assets of the limited partnerships and to incur such expenses "as may be necessary and advisable."
 
 
 12
 As the district court explained in its findings of fact and conclusions of law, the record in this case unequivocally demonstrates that San Vicente's property was included in the receivership for administrative purposes and that a fair and proportionate share of the administrative expenses were to be paid from these funds and assets. The district court's findings on this issue are not clearly erroneous; rather, they are well supported by the record. We agree with the district court that San Vicente's property was included in the receivership estate.[2]
 
 II. The District Court's Authority
 
 13
 Generally, federal courts enjoy wide discretion in fashioning relief and protective measures in SEC actions:
 
 
 14
 The federal courts have inherent equitable authority to issue a variety of "ancillary relief" measures in actions brought by the SEC to enforce the federal securities laws. This circuit has repeatedly approved imposition of a receivership in appropriate circumstances. The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief.
 
 
 15
 SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir.1980) (citations omitted). Thus, a federal court generally has the equitable authority to impose a receivership in an SEC action if the court determines a receivership is necessary.
 
 
 16
 San Vicente, however, argues that the district court lacked the authority to include San Vicente's property in the receivership. This argument is not without merit. Neither San Vicente nor APC was named as a defendant in the SEC action against APHI, and the proceedings against San Vicente's property in this case raise serious questions concerning the limits of the court's power. First, we must determine whether the district court's assertion of quasi in rem jurisdiction denied San Vicente due process of law. Second, we must decide whether federal law allows receivership expenses to be taken from limited partnership assets when the receiver essentially replaces and acts as the general partner. Both of these limits on the district court's power to structure a receivership are issues of law, and review is therefore de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 A. Due Process
 
 17
 The only defendant before the district court in the SEC action was APHI. By including the property of San Vicente in its receivership order, the court exercised control over the property of a legal entity not before the court. Therefore, we must determine whether a district court has the power to include the property of a non-party limited partnership in a receivership order.
 
 
 18
 "The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in International Shoe." Shaffer v. Heitner, 433 U.S. 186, 207, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683 (1977). Here, there are sufficient contacts with the forum to support assertion of quasi in rem jurisdiction over San Vicente's property without offending due process requirements. It is undisputed that the district court had jurisdiction over APHI, and APHI controlled San Vicente and all of its property through APC. In addition, San Vicente was formed as a California limited partnership, and its principal place of business was located in California. Therefore, assertion of jurisdiction over San Vicente's property does not violate due process under the minimum contacts analysis.
 
 
 19
 Moreover, exercising jurisdiction over San Vicente's property is consistent with "traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The burden on San Vicente of litigating in California is not severe; in fact, no other forum would be more convenient for San Vicente. Thus, the district court's assertion of jurisdiction over San Vicente's property did not deny San Vicente due process under the International Shoe jurisdictional analysis.
 
 
 20
 San Vicente's complaints about the court's jurisdiction are directed at the failure to name San Vicente as a party to the SEC action and accompanying receivership. According to San Vicente, procedural due process requires that the owners of property must be named as party defendants to any action exercising quasi in rem jurisdiction over the property.
 
 
 21
 It is well settled "that property cannot be subjected to a court's judgment unless reasonable and appropriate efforts have been made to give the property owners actual notice of the action." Shaffer v. Heitner, 433 U.S. at 206, 97 S.Ct. at 2580. The Constitution requires that property owners receive procedural due process in the form of notice and opportunity for a hearing. Goss v. Lopez, 419 U.S. 565, 577-79, 95 S.Ct. 729, 738-39, 42 L.Ed.2d 725 (1975); Arnett v. Kennedy, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650-51, 40 L.Ed.2d 15 (1974); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Whether the opportunity for a hearing must be afforded before any preliminary deprivation of a property interest depends on a balancing of interests. Arnett, 416 U.S. at 167-71, 94 S.Ct. at 1650-53. However, we need not dwell on the timing of the hearing in this case because opportunities for a hearing were available before any material deprivation of a property interest occurred.
 
 
 22
 Although San Vicente was not named as a party in the SEC action, it did receive actual notice of the receivership proceedings. APC, as a subsidiary of APHI, had notice of the receivership and an opportunity for a hearing. The district court specifically ordered the subsidiaries of APHI and the creditors of APHI "to show cause, if there be any, why a permanent receiver should not be appointed." Therefore, APC received notice and opportunity for a hearing before it was removed as general partner of San Vicente. Because the general partner represents and receives notice for a limited partnership,[3] the property of San Vicente was not placed in the receivership without notice and a hearing.
 
 
 23
 Moreover, even the limited partners of San Vicente received notice and opportunity for a hearing. On June 20, 1984, Orr mailed the same district court order (ORDER TO SHOW CAUSE WHY A PERMANENT RECEIVER SHOULD NOT BE APPOINTED) to all the limited partners of San Vicente. Thus, the June 26, 1984 order appointing Orr as permanent receiver over San Vicente's property did not violate procedural due process requirements.
 
 
 24
 Orr also gave the limited partners periodic updates of the receivership's progress in a chain of correspondence beginning with an August 13, 1984 letter. Throughout the receivership, San Vicente had the opportunity to object to Orr's handling of the receivership, as evidenced by San Vicente's May 20, 1985 opposition to Orr's motion for consolidation. Finally, San Vicente received a hearing on the issue of Orr's request for receivership expenses from San Vicente.
 
 
 25
 Because San Vicente received notice at all stages of the receivership proceedings and had every opportunity to participate in the proceedings, the fact that San Vicente was never a named party in the proceedings did not violate due process. Although we agree with San Vicente that the normal procedure is to name the owners of property as party defendants before seeking quasi in rem jurisdiction over the property, the failure to name San Vicente as a party in this case did not violate due process. San Vicente received the same notice and opportunity to be heard as it would have received as a named party to the SEC action.[4]
 
 
 26
 In sum, a district court has the power to include the property of a non-party limited partnership in an SEC receivership order as long as the non-party meets the minimum contacts standard set out in International Shoe and receives actual notice and an opportunity for a hearing. In the present case, San Vicente was "sufficiently involved in the receivership action" to satisfy due process. United States v. Arizona Fuels Corp., 739 F.2d 455, 459 (9th Cir.1984) (non-party received due process in receivership proceeding because the non-party was involved in the receivership action) (citing American Brake Shoe & Foundry Co. v. New York Ry., 10 F.2d 920, 921 (2d Cir.1926)).
 
 B. 28 U.S.C. § 959(b)
 
 27
 San Vicente argues that receivership expenses cannot be paid from limited partnership assets when the receiver is acting in the place of the general partner. Under federal law, the "receiver ... shall manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." 28 U.S.C. § 959(b) (1988).[5] Because Orr essentially replaced and acted as the general partner, San Vicente argues that the receiver is bound by state law as if he were the general partner. Thus, San Vicente asserts that Orr cannot recover expenses from partnership assets because APC had already been paid its management fee and had no contract right to further payment.
 
 
 28
 This analysis fails because Orr was the receiver for San Vicente's property, not the general partner of San Vicente. This distinction is crucial to our analysis. If Orr were receiver for only APC and its property, section 959(b) might require Orr to assume APC's exact role and legal relationship in the limited partnership. However, Orr was appointed receiver not only for APC and its property but for all the property controlled by APC (i.e., San Vicente's property).
 
 
 29
 As receiver for San Vicente's property, Orr was required to manage the property as San Vicente "would be bound to do if in possession thereof." Id. However, because the receivership included San Vicente's property, section 959(b) did not require Orr to assume APC's legal relationship to the limited partners. As a receiver of the property, Orr was not an agent of APC; he was an officer of the court who managed the property under the authority of the court and incurred expenses chargeable upon the property. Atlantic Trust Co. v. Chapman, 208 U.S. 360, 375, 28 S.Ct. 406, 411, 52 L.Ed. 528 (1908); see also Bowersock Mills & Power Co. v. Joyce, 101 F.2d 1000, 1002 (8th Cir.1939); Security Pac. Nat'l Bank v. Geernaert, 199 Cal.App.3d 1425, 1431-32, 245 Cal.Rptr. 712, 716 (1988). Thus, the fact that APC would not be entitled to management fees under the partnership agreement does not bar the district court from charging receivership expenses against receivership property.
 
 
 30
 Orr's recovery of unallocated receivership expenses from San Vicente does not violate any California law. San Vicente alleges that Orr violated California law by contravening the partnership certificate and spending partnership funds on matters unrelated to San Vicente. See Cal.Corp.Code § 15509(1)(a), (d). These allegations are not supported by the record. We agree with the district court that the receivership produced substantial and important benefits for San Vicente. Thus, charging San Vicente for a portion of the unallocated receivership expenses is not spending partnership funds on matters unrelated to San Vicente. More importantly, San Vicente's allegations are based on its view of Orr as a general partner bound by the same constraints as APC. As discussed above, Orr was the receiver for San Vicente's property, not the general partner of San Vicente.
 
 
 31
 Therefore, we hold that section 959(b) does not burden the receiver for limited partnership property with all of the constraints imposed on a general partner and does not prevent the receiver from recovering receivership expenses from partnership property. At bottom, San Vicente's argument is premised on its view that the receivership did not include San Vicente's property. Because we reject this characterization of the receivership, we must also reject San Vicente's section 959(b) argument.
 
 III. Reasonableness of Expenses
 
 32
 San Vicente asserts that the district court's award to Orr is unreasonable. The award of receivership fees in an SEC action is analogous to the award of receivership fees in bankruptcy proceedings, and we review the district court's award for an abuse of discretion. See Southwestern Media, Inc. v. Rau, 708 F.2d 419, 422 (9th Cir.1983) ("A trial court has discretion to determine reasonable compensation for services rendered in bankruptcy proceedings."); United States v. United Foam Corp., 618 F.2d 577, 580 (9th Cir.1980) (trustees' fees and receivership fees "should only be overturned on a finding of an abuse of discretion"); In re Abilene Flour Mills Co., 439 F.2d 937, 939 (10th Cir.1971) (the principle that attorneys' fees in bankruptcy proceedings are reviewed for an abuse of discretion is also applicable to the determination of receivers' fees). The district court's findings of fact are reviewed for clear error. See Southwestern Media, 708 F.2d at 422.
 
 
 33
 The district court determined that Orr was entitled to $425,878 from San Vicente for unallocated receivership expenses and accounting expenses.[6] This amount is not simply San Vicente's pro rata share of Orr's total expenses; it is based on the time and effort Orr expended in managing San Vicente. San Vicente's share of the receivership expenses was greater than that attributed to the other limited partnerships because Orr spent a disproportionate amount of his time as receiver managing San Vicente affairs. Orr took control of San Vicente's construction project, which was only 41% completed when he was appointed receiver, and brought about the building's completion. The building was sold subsequently for $18,250,000, allowing San Vicente's limited partners to recoup a large percentage of their original investment.
 
 
 34
 In determining that Orr was due $425,878, the district court applied the factors enunciated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974) (determining reasonable attorneys' fees in civil rights action). See also In re Yermakov, 718 F.2d 1465, 1471 (9th Cir.1983) (citing Johnson in using similar factors to assess attorneys' fees in bankruptcy proceeding). In sum, the court determined that Orr and his staff spent a large percentage of their time and effort working with San Vicente and that San Vicente greatly benefited from this work. In addition, the court found that the work was extremely difficult. The district court also noted that the limited partners had agreed to pay APC and a developer $3,426,500 for completion of the building while Orr and his staff performed 59% of this work for only $425,878.
 
 
 35
 The district court's factual findings, which must be accepted absent clear error, are sufficient to establish that the award was reasonable. The award represents a portion of the overall receivership costs, and the district court, within its discretion, determined that San Vicente should bear a large percentage of these unallocated costs. We find no error in the district court's findings, and we affirm the district court's award as reasonable.
 
 CONCLUSION
 
 36
 The district court included the property of San Vicente in the APHI receivership, and this exercise of equitable authority did not violate due process requirements or section 959(b). The award of receivership expenses was reasonable. Therefore, we AFFIRM the judgment of the district court and hold that Orr has a first priority administrative claim as a superseded custodian in San Vicente's Chapter 11 bankruptcy.
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 The amount actually stated in the order, $305,477.09, was calculated incorrectly. The actual amount should be $307,477.09, representing $425,878 in receivership expenses chargeable to San Vicente minus $118,400.91 for San Vicente's counterclaims against Orr for improper expenses
 
 
 [2]
 The district court also found that Orr was San Vicente's superseded custodian under the Bankruptcy Code. A custodian is entitled to a first priority bankruptcy preference for reasonable expenses incurred in working with the debtor. 11 U.S.C. §§ 503(b)(3)(E), 507(a)(1) (1988). Therefore, as custodian for San Vicente's property, Orr is entitled to a priority claim in San Vicente's Chapter 11 bankruptcy
 The Bankruptcy Code defines custodian to include a "receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title." 11 U.S.C.S. § 101(11)(A) (Law. Co-op. Supp.1991). Section 101(11)(A) is unambiguous; if Orr's appointment as receiver for San Vicente's property was valid, he is a superseded custodian under the Bankruptcy Code. Thus, the real issue is whether Orr's appointment as receiver for San Vicente's property was legal and valid.
 
 
 [3]
 See Cal.Corp.Code § 15012 (West.1991) (adopting Unif. Partnership Act § 12); Stork Restaurant v. Sahati, 166 F.2d 348, 362 (9th Cir.1948) ("Notice to one partner is notice to all."); Great W. Trading Co. v. Mercantile Trust Co. Nat'l Ass'n, 661 S.W.2d 40, 43-44 (Mo.Ct.App.1983)
 
 
 [4]
 San Vicente argues that it was denied due process because it did not receive notice that it would be liable for a portion of the receivership expenses until after the receivership had been in place for almost a year. This argument fails because it is well settled that outstanding receivership expenses may be charged against receivership property, see O'Leary v. Moyer's Landfill, Inc., 677 F.Supp. 807, 822 (E.D.Pa.1988) (citing 1 R.E. Clark, A Treatise on the Law and Practice of Receivers § 270, at 416 (3d ed. 1959)), and that the district court has broad equitable powers in imposing and structuring receiverships in SEC actions. Wencke, 622 F.2d at 1369. San Vicente cannot receive the benefits of the receivership and then argue that it is not liable for receivership expenses because it did not know receivership expenses could be charged against the receivership estate
 
 
 [5]
 The purpose of section 959(b) is to prevent receivers from avoiding laws applicable to property subject to the receivership estate. See In re Chicago Rapid Transit Co., 129 F.2d 1, 6 (7th Cir.) (section 959(b), formerly 28 U.S.C. § 124 (1940), requires only that the receiver or trustee operate the property in accordance with state laws), cert. denied, 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942). For example, section 959(b) requires that receivers exercise control over receivership property to avoid violation of state environmental laws. In re Laurinburg Oil Co., 49 B.R. 652, 654 (Bankr.M.D.N.C.1984)
 
 
 [6]
 San Vicente's counter-claims totalling $118,400.91 for improper expenditures were subtracted from the $425,878 to arrive at the net award of $307,477.09