**SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,**

v.

**AMERICAN CAPITAL INVESTMENTS, INC.; Stephen J. Murphy; Kenneth A. Sorensen; Richard D. Otto; Adfin Corporation; Einhorn & Edgerton, Defendants,**

**and**

**John P. Shelton; ACI Investors Protective Association, and Approximately 127 ACI (American Capital Investments) Investors, Defendants–Appellants,**

**Richard G. Shaffer, Defendant–Appellee.**

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,**

v.

**AMERICAN CAPITAL INVESTMENTS, INC.; John P. Shelton; ACI Investors Protective Association, and Approximately 127 ACI (American Capital Investments) Investors, Defendants–Appellants,**

**Richard G. Shaffer, Appellee,**

**and**

**Stephen J. Murphy; Kenneth A. Sorensen; Richard D. Otto; Adfin Corporation, Defendants.**

**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**AMERICAN CAPITAL INVESTMENTS, INC., et al., Defendants.**

**John SHELTON; ACI Investors Protective Association and Approximately 156 ACI Investors, Appellants,**

v.

**Richard G. SHAFFER, Court Appointed Receiver for Defendant American Capital Investments, Inc., Appellees.**

**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

---

and

John P. Shelton, Esq.; Approximately 156 ACI Investors; ACI Investors Protective Association, Appellants,

v.

AMERICAN CAPITAL INVESTMENTS, INC., et al., Defendants,

and

Richard G. Shaffer, Court Appointed Receiver for Defendant, American Capital Investments, Inc., Appellee.

Nos. 95–55193, 95–55283, 95–55872 and 95–55878.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1996.

Decided Oct. 22, 1996.

**1136**

Thomas W. Dressler, Dressler, Rein & Evans, Los Angeles, CA, for the appellants.

Charles E. Slyngstad, Musick, Peeler & Garrett, Los Angeles, CA, for the appellee.

Before: FLETCHER and TASHIMA, Circuit Judges, and RESTANI,* Court of International Trade Judge.

## OPINION

TASHIMA, Circuit Judge:

These cases consist of four consolidated appeals from orders of the district court in a receivership proceeding which was part of a Securities and Exchange Commission ("SEC") civil enforcement action. These appeals stem from the efforts of appellants, defrauded investors ("Investors") of American Capital Investments, Inc. ("ACI"), to upset a judicial sale of ACI-owned real property by appellee Richard G. Shaffer ("Shaffer"), the court-appointed receiver for ACI ("Receiver"). The appeals are from orders: (1) confirming the sale ("Sale Order"); (2) refusing to set aside the Sale Order ("Rule 60 Order"); (3) authorizing an addendum to the sale agreement ("Addendum Order"); and (4) transferring the Investors' claims to the proceeds of the Receiver's sale ("Transfer Order").

We have jurisdiction over the timely appeal from the Transfer Order under 28 U.S.C. § 1292(a)(1). We assert "hypothetical jurisdiction" over the appeals from the re-

maining orders, as discussed more fully below. We dismiss in part and affirm in part.

## I. BACKGROUND

The SEC enforcement action alleged that ACI violated federal securities laws through sales of interests in real estate investments. The SEC prayed for, *inter alia*, the appointment of a receiver to take control of ACI-related assets. The district court first appointed Shaffer as ACI's temporary receiver, and later as permanent receiver, pursuant to Fed.R.Civ.P. 66 and its general equitable jurisdiction. The Receiver was empowered under 28 U.S.C. § 754 to take possession and control of all assets "belonging to or in the possession or control of ACI and its subsidiaries and affiliates." As required by § 754, the Receiver filed receivership notices in the districts where ACI's real properties were located.

Through imposition of the receivership, the SEC sought to protect ACI's creditors and some 200+ investors from the dissipation of ACI's assets and to provide for their compensation.

ACI's fraudulent scheme purported to offer Investors joint ventures and limited partnerships in specific real estate projects. In reality, the money raised went into an undifferentiated pool. Much of the money raised was used for unrelated, extravagant expenses and to pay off prior investors. ACI's commingling of funds made it impossible to trace whose money went to which real estate purchase. ACI had guaranteed its investors considerable "profits" on their investment, which could be reinvested at the election of the investor. However, the amount ACI owed its investors greatly exceeded the actual equity of ACI's real estate investments.

By consent judgments, the ACI defendants disgorged their interests in ACI. The district court terminated the underlying fraud case, but continued the receivership, and previously issued injunctive relief.

---

* The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sit-

ting by designation.

In early 1994, the Receiver negotiated an agreement with JH Financial Group ("JH") to convey to JH 100 percent fee interests in all eight ACI real properties that remained in the receivership estate (the "JH sale"). The JH sale was opposed by the Investors, who believed that holding the properties until the real estate market improved would realize a higher return. The Investors began mobilizing against the proposed sale.

Around the same time, the Receiver moved for permission to treat all Investors equally in the division of the proceeds from the sale of ACI assets. The Investors did not oppose this motion.[1] The district court granted the motion in its Order Permitting Receiver to Consider All ACI Investors Equally ("Equal Treatment Order"). The Equal Treatment Order provided that each investor's recovery would be a pro-rata share, based on his or her net investment. No investor appealed the Equal Treatment Order.

The court then turned to the two-step process mandated by 28 U.S.C. § 2001 for approving the sale of receivership property— the appointment of appraisers to appraise the properties, followed by a sale confirmation hearing.

As part of their efforts to thwart the JH sale confirmation, the Investors applied for leave to intervene, file a petition for involuntary bankruptcy, and record warranty deeds to the properties held by some of the Investors. The district court denied intervention and cleared the "wild" warranty deeds (which the Investors were obligated to reconvey to ACI under the investment agreements) from the properties' title. In confirming the sale, the court also denied appellants' application to institute bankruptcy proceedings against ACI. The Investors took no appeals from the orders denying their application to intervene and to record the warranty deeds.

At the sale confirmation hearing, the Investors argued that the Sale Order would exceed the district court's jurisdiction be-cause the Receiver could not deliver legal title to the real properties. Of the eight properties, five were wholly owned by ACI, but title in three was jointly held by ACI and three limited partnerships between ACI and selected investors. The Receiver initially argued that as receiver for ACI, the General Partner of these partnerships, he exercised the authority of the General Partner to convey title to the three properties.

Details about the state of these partnerships and the state of ACI's title emerged over the months that followed the sale confirmation hearing. All three limited partnership agreements provided for the partnership's dissolution upon the appointment of a receiver for the General Partner. It eventually came to light that two of these limited partnerships were never lawfully formed for lack of the proper filing of papers that ACI should have filed with the state.[2]

The Investors also argued that the Receiver had not adequately marketed the properties to obtain the best price, and had actually suppressed bidding in favor of the JH sale. They purported to show that the JH sale would not yield sufficient cash proceeds to satisfy the claims of Investors, commercial creditors, or even administrative creditors.

The Investors presented an alternate, supposedly preferable, proposal for the disposition of the properties—transfer of the properties to the Investors. They sketched a plan to pay all non-investor claims in full and to accept the ACI real properties subject to existing mortgages in satisfaction of their own fraud claims against ACI.

In the Sale Order, relying in part on ACI's powers as the General Partner of the limited partnerships, the court concluded that it had jurisdiction and authority, as a federal equity receivership court, to order the sale of the limited partnerships' interests in the properties. As to the merits of the sale, the district court found that the JH sale met the statuto-

---

1. Indeed, a letter circulated by leaders of the Investors supported the equal treatment of all ACI investors in the division of ACI's assets, whether their interests were in the form of deeds, limited partnership interests, notes, or preferred shares in ACI or affiliated entities.

2. Further, in one property where record title was held solely by ACI, there allegedly existed approximately 40 unrecorded grant deeds for small, fractional fee interests in the names of individual investors.

ry requirement of a purchase price of at least two-thirds of the appraised value, and that the sale served the best interests of the Investors and creditors. Citing financing uncertainty, it rejected the Investors' proposal as inadequate under 28 U.S.C. § 2001. Citing their lack of detailed plans for satisfying the claims of creditors, it also found that the Investors' proposal was not in the interests of the estate.

The Investors thereafter moved under Fed.R.Civ.P. 60 to set aside the Sale Order. They argued that the limited partnerships had dissolved upon appointment of the Receiver and that the dissolution terminated ACI's status as General Partner, thus, foreclosing the Receiver's ability to convey the properties without the consent of the Investors. The Investors also asserted that the Receiver had abandoned jurisdiction over the ACI real properties by failing to file timely notice in the various districts where the properties were located, as required by 28 U.S.C. § 754. Lastly, the Investors renewed their attack on the "bad economics" of the JH sale.

The district court denied the Investors' motion in its Rule 60 Order. Relying upon the equitable powers of a federal receivership court, it concluded it had jurisdiction over the property interests of the limited partnerships and the partners. It also found the Receiver's § 754 filings to be timely, and reaffirmed the Sale Order in its other essentials.

The Investors appealed from the Sale and Rule 60 Orders, and applied to the district court for a stay of the JH sale, which was denied.[3] Thereafter, the Investors mounted a wide-ranging, extrajudicial campaign to thwart the sale's closing. Counsel for the Investors contacted the purchaser, title insurers, lenders and brokers involved in the JH sale to inform them of the Investors' claims and to warn them of future litigation challenging the conveyance.

Partly in response to this campaign, the purchaser backed off the initial closing date for the sale. The Receiver then moved for the two other orders at issue on these appeals, the Addendum and Transfer Orders. The district court granted the Receiver's motions. The Addendum Order authorized the execution of an addendum to the sale agreement that: (1) confirmed a decrease in the purchase price by $250,000 in accordance with the terms of the original sale agreement; and (2) extended the closing date. It also clarified that language in the original sale agreement indemnified the purchaser against claims arising out of the sale, whether filed before or after the closing date.

The Transfer Order: (1) transferred all interests and claims of investors in the real properties to the proceeds of the JH sale; and (2) enjoined the Investors from filing claims to vindicate their interests, except against the receivership estate.

The JH sale closed on June 30, 1995. The Investors portray that sale as a financial disaster for the receivership estate and as a scandalous giveaway of valuable properties to a shrewd and unscrupulous purchaser.[4] The Investors proffer details about the manner of closing and the subsequent sale or foreclosure of ACI properties to show that the purchaser took unfair advantage of the Receiver in several different ways.

## II. THE ISSUES RAISED

On appeal, the Investors contend that: (1) the district court exceeded its jurisdiction in confirming a sale purporting to convey title to real property in which the Investors had legal interests; (2) the district court abused its discretion in rejecting the Investors' alternate proposal for the disposition of the ACI real properties; (3) the district court abused its discretion by the use of an equity receivership to liquidate the ACI assets, instead of permitting the Investors to file a petition for involuntary bankruptcy; (4) the JH sale is

---

3. This court never acted on appellants' subsequent motion before it for a stay of the JH sale pending appeal. That motion was dismissed as moot after the dismissal of the appeals.

4. To this end, the Investors ask this court to take judicial notice of much information they have

compiled since the closing about the JH sale and its aftermath. This information discloses the identity of the true purchaser of the ACI properties—an affiliate of the Belzberg family of Canada.

void because it closed based on the Addendum and Transfer Orders, which the district court had no jurisdiction to issue after this appellate court had assumed jurisdiction over the Sale and Rule 60 Orders; (5) the Transfer Order exceeded the district court's jurisdiction; and (6) the district court deprived the Investors of their property interests and claims without due process of law.

## III. JURISDICTION

At the threshold, this case presents three close questions of appellate jurisdiction: (1) whether jurisdiction lies under 28 U.S.C. § 1291 for the appeals from the Sale Order, Rule 60 Order, and Addendum Order; (2) whether these same appeals are now moot because the JH sale has closed; and (3) whether the appeal from the Sale Order was timely taken.[5] Asserting "hypothetical jurisdiction," we will reach the merits of all but two of the issues raised on appeal.

### A. Hypothetical jurisdiction

■ We have applied "hypothetical jurisdiction" where jurisdiction is disputed to assume, without deciding, the existence of subject matter jurisdiction in order to reach the merits of an appeal. *In re Grand Jury Subpoena Issued to Bailin,* 51 F.3d 203, 206 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 472, 133 L.Ed.2d 402 (1995); *Wong v. Ilchert,* 998 F.2d 661, 662–63 (9th Cir.1993). To assert hypothetical jurisdiction, we require four elements: (1) the jurisdictional question must be difficult; (2) the decision on the merits must be clear; (3) the appeal must be resolved against the party asserting jurisdiction; and (4) undertaking a resolution on the merits, as opposed to dismissing for lack of jurisdiction, must not affect the outcome. *Bailin,* 51 F.3d at 206.

■ These appeals satisfy all four elements. Appellate jurisdiction is uncertain on all but two issues that the Investors raise (not including issues relating to the Transfer Order, where jurisdiction is conceded). As we explain in Part IV, we affirm without

hesitation the district court's orders. Finally, our decision on the merits is not outcome determinative. The JH sale stands, as it would on dismissal for lack of jurisdiction.

### B. Statutory basis for appellate jurisdiction

Appellants assert 28 U.S.C. § 1291 as the basis for appellate jurisdiction over their appeals from the Sale Order, the Rule 60 Order, and the Addendum Order.

Two 19th century Supreme Court cases support appellants' position that a confirmation of sale order is a final, appealable order. *See First Nat'l Bank v. Shedd,* 121 U.S. 74, 85, 7 S.Ct. 807, 812–13, 30 L.Ed. 877 (1887) (sale order in receivership proceeding is appealable); *Sage v. Railroad Co.,* 96 U.S. 712, 714, 24 L.Ed. 641 (1877) ("We have often decided that a decree confirming a sale, if it is final, may be appealed from.... For relief against the sale, resort can alone be had to an appeal from the decree of confirmation.").

These precedents find some support in late 20th century case law. *See In re American Colonial Broadcasting Corp.,* 758 F.2d 794, 801–03 (1st Cir.1985) (order authorizing negotiation to sell property not a final order, but parties can appeal from eventual sale confirmation order); *Los Angeles Trust Deed & Mortgage Exch. v. SEC,* 285 F.2d 162, 165 (9th Cir.1960) (citing § 1291, without analysis, as jurisdictional basis for appeals from securities law violation judgments *and* receivership liquidation order), *cert. denied,* 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961).

■ However, our decision in *SEC v. American Principals Holdings, Inc.,* 817 F.2d 1349 (9th Cir.1987), suggests, to the contrary, that the orders in this case are not final orders appealable under § 1291. In *American Principals,* the appellant objected to an order for payment to the receiver from the assets of the partnerships held in receivership, and to the authorization of a "spin-

---

5. The Receiver concedes this court's jurisdiction over the appeal from the Transfer Order, which appellants assert lies under both 28 U.S.C. §§ 1291 and 1292(a)(1). The Receiver does not

contend that the Transfer Order appeal is moot. Lastly, there is no question that the appeals from the Rule 60, Addendum, and Transfer orders were timely filed under Fed. R.App. P. 4.

off" of some of the partnerships. *Id.* at 1350. Because the receivership proceedings remained ongoing, and because appellant could later recover the disputed payments through claims against the receivership estate, we held the order nonfinal. *Id.*

We assert hypothetical jurisdiction rather than address the unresolved tension between *Shedd* and *Sage,* on the one hand, and *American Principals,* on the other.

## C. Mootness

Appellants have essentially conceded that effective relief from the Sale, Rule 60 and Addendum Orders depends on whether the JH sale can be set aside. A court must have the power to unwind the completed sale, or the appeals from these orders are moot.

There is no authority discussing the mootness effect of a sale's closing upon an appeal from a sale confirmation order in an equity receivership proceeding. There is, however, much authority in bankruptcy. The general rule in bankruptcy is that, unless the sale order is stayed pending appeal, the trustee's acts in accordance with that order should not thereafter be subject to reversal, even if the order is overturned on appeal. *Bennett v. Gemmill (In re Combined Metals Reduction Co.),* 557 F.2d 179, 188–89 (9th Cir.1977). Later cases citing *Combined Metals* also cite former Bankruptcy Rule 805, or its subsequent codification, 11 U.S.C. § 363(m):

> Unless an order approving a sale of property ... is stayed pending appeal, the sale to a good faith purchaser ... shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser ... knows of the pendency of the appeal.

Fed. R. Bankr.P. 805 (superceded 1983).

We have acknowledged exceptions, albeit ill-defined, to this rule of mootness. In *Taylor v. Lake (In re CADA Inv., Inc.),* 664 F.2d 1158 (9th Cir.1981), we held the appeal was not moot, despite the sale's closing in the absence of a stay, because the language of the sale contract expressly conditioned the conveyance on the outcome of the appeal from the sale confirmation order. *Id.* at 1160. We also relied on the fact that, "in contrast to other cases in which we have addressed comparable mootness problems, all essential parties are before the court." *Id.*

■ Case law interpreting *CADA Inv.* has been inconsistent on whether the purchaser's presence before the court is sufficient by itself to create an exception to the rule of mootness in the absence of a stay. In *Sulmeyer v. Karbach Enter. (In re Exennium, Inc.),* 715 F.2d 1401 (9th Cir.1983), we read *CADA Inv.* to rest on the contractual language as the basis for the exception to the stay requirement. *See id.* at 1404. In contrast, *Sun Valley Ranches, Inc. v. The Equitable Life Assurance Soc'y (In re Sun Valley Ranches, Inc.),* 823 F.2d 1373 (9th Cir.1987), cited *CADA Inv.* and other cases for a general exception to mootness where the purchaser is a party to the appeal, even though there was no stay. *See id.* at 1375.[6]

Even if we ignore the limitation spelled out in *Exennium,* we cannot apply the exception set out in *CADA Inv.* and *Sun Valley* to save these appeals from mootness. Besides appellants' failure to obtain a stay of the JH sale pending appeal, all essential parties are not before the court.

■ The Investors point out that attorney Bruce Greene, who appeared before the district court for JH, was also the registered agent of the Belzberg affiliate that purchased the ACI properties.[7] However, the Investors' own requests for judicial notice demonstrate that at least three of the eight ACI properties included in the JH sale have since been resold or foreclosed upon.[8] These properties are no longer in the hands of the Belzbergs. The Investors represented at

---

**6.** These cases do not make clear whether, for the mootness exception to apply, the purchaser must be a party to both the district court proceedings and to the appeal.

**7.** In response to appellants' unopposed request, we judicially notice this fact pursuant to Fed.

R.Evid. 201(d). The Receiver acknowledged at oral argument that Greene was, during the relevant times in the proceedings below, acting as the registered agent of the Belzbergs.

**8.** We judicially notice these facts pursuant to Fed.R.Evid. 201.

oral argument that the institutions that foreclosed on two of the properties appeared in district court and were thus properly "before the court." Assuming arguendo that this is so, there remains the Solano Beach property, resold by the Belzbergs to a third party whom the Investors acknowledge was never before the district court.

■ The JH sale conveyed eight bundled properties for the single price of $24.05 million. The Investors have not explained how this court can order the unwinding of this sale without voiding the conveyance of all eight properties. Their notion of imposing a constructive trust on the proceeds of the Solano Beach property that remain in the hands of the Belzbergs is untimely and inadequately presented.[9]

The Investors raise another, more compelling basis for a mootness exception. Two of their contentions are that: (1) the district court did not have the jurisdiction and power to order the Receiver's conveyance of the Investors' interests in the real property; and (2) the sale was void because the district court lacked jurisdiction to issue the Addendum and Transfer Orders while the Sale and Rule 60 Orders were still on appeal. These contentions distinguish the instant case from the many cases applying the mootness doctrine to judicial sales closed in the absence of a stay. In those cases, the parties assigned error to the proceedings, but did not question the court's jurisdiction to conduct the sale in the first instance. *See, e.g., Sun Valley,* 823 F.2d at 1374; *Combined Metals,* 557 F.2d at 184–186.

A 19th century Supreme Court case supports the proposition that a sale confirmation order issued without subject matter jurisdiction may be set aside as void, notwithstanding the absence of a stay. *See Voorhees v. Jackson,* 35 U.S. (10 Pet.) 449, 9 L.Ed. 490 (1836). In *Voorhees,* in response to a challenge to the judicial sale of property, the Court held that the completed sale was not

subject to collateral attack because the sale was conducted by a court of "competent jurisdiction of the parties [and] the subject matter, with authority to use the process it has issued...." *Id.* 35 U.S. (10 Pet.) at 474. The Court continued:

> The errors of the court do not impair [the proceedings'] validity: binding till reversed, any objection to their full effect, must go to the authority under which they have been conducted. If not warranted by the constitution or law of the land, our most solemn proceedings can confer no right which is denied to any judicial act under colour of law....

*Id.* If there is such a " 'want of jurisdiction, the proceedings are void and a mere nullity, and confer no right ... and may be rejected when collaterally drawn into question.' " *Id.* at 477 (citation omitted).

*Voorhees* appears to allow a collateral attack on a jurisdictionally void sale, but does not address an attack on direct review. We believe, under the facts of this case, such direct review may be necessary to ensure that the Investors' jurisdictional challenges receive a fair hearing. The Transfer Order bars appellants from instituting any collateral attack on the sale. If the Sale Order and/or Addendum Order are void for lack of jurisdiction, then the Transfer Order is void, too, as an injunction in furtherance of a void order. Thus, a fair consideration of the appeal from the Transfer Order may require consideration of the jurisdictional powers of the equity receivership court to order the sale here. And only if appellants can successfully overturn the Transfer Order, can they be assured of a right to collaterally attack the conveyance.

Thus, *Voorhees* may preserve from mootness appellants' challenges to the jurisdiction of the district court to order the sale of the ACI properties. Without deciding, we assert hypothetical jurisdiction over these issues on this basis.

---

9. At oral argument, the Investors for the first time raised the possibility of imposing a constructive trust on the proceeds from the sale of property included in the JH sale, rather than voiding its conveyance. Because this theory was not briefed, we decline to consider it. *See* Fed.

R.App. P. 28(a)(6); *Eberle v. City of Anaheim,* 901 F.2d 814, 818 (9th Cir.1990); *Simpson v. Union Oil Co.,* 411 F.2d 897, 900 n. 2 (9th Cir.), *rev'd on other grounds,* 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed.2d 13 (1969).

The Investors, however, raise other issues threatened by mootness. Out of an abundance of caution, we will also assert hypothetical jurisdiction over appellants' constitutional due process claims arising from the Sale, Rule 60, and Addendum Orders.[10]

■ But we do dismiss as moot appellants' two contentions that merely assign to the district court an abuse of its discretion, and no unconstitutionality or lack of jurisdiction. We dismiss the issue of whether the district court abused its discretion under 28 U.S.C. § 2001, by rejecting the Investors' alternate plan for the disposition of the ACI properties in favor of the JH sale.[11] We also dismiss the issue of whether the district court abused its discretion by the use of an equity receivership to liquidate the ACI assets, instead of permitting the Investors to file a petition for involuntary bankruptcy.

### D. Timeliness of notice of appeal from Sale Order

Appellants noticed their appeal from the Sale Order several days outside the general 30–day period of Fed. R.App. P. 4(a)(1). The Receiver contends that the appeal from the Sale Order should therefore be dismissed, because the 60–day period for a case where the government is a party is inapplicable here.

There is no case on point involving the timeliness of an appeal from an SEC receivership order. Nonetheless, appellants' argument for applying the 60–day period is plausible, because the SEC initiated the receivership and has a direct regulatory interest in its outcome. *Compare Combined Metals*, 557 F.2d at 203–204 (IRS was a creditor, but had no interest in proceedings other than having its claim paid; therefore,

60–day period was inapplicable). The SEC filed papers adverse to the Investors in the receivership proceedings below.[12] *See id.*

We need not decide this question, as we assert hypothetical jurisdiction, assuming that the appeal was timely filed.

## IV. MERITS

### A. Jurisdiction to Convey Title

The key issue on the merits is whether the district court exceeded its jurisdiction in confirming the Receiver's sale purporting to convey title to real property in which appellants claimed legal interests. Appellants' challenges break down into two parts: (1) did the Receiver comply with the filing requirements of 28 U.S.C. § 754; and (2) does California partnership law or the federal law of equity receivership control the Receiver's power to convey title?

■ The jurisdictional limits to the district court's power in equity receivership proceedings are issues of law, reviewed *de novo*. *See SEC v. American Principals Holding, Inc. (In re San Vicente Medical Partners Ltd.)*, 962 F.2d 1402, 1406 (9th Cir.), *cert. denied*, 506 U.S. 873, 113 S.Ct. 210, 121 L.Ed.2d 150 (1992).

#### 1. *Filing requirements of § 754*

Appellants contend that the Receiver lost jurisdiction over the sale properties by not timely filing receivership notices in the districts where the properties were located. Under 28 U.S.C. § 754, a receiver will be divested of jurisdiction over property in a district, unless he files notice in that district within 10 days of the entry of his appointment order.[13] The Investors assert that the

---

**10.** Appellants also challenge on due process grounds the Transfer Order. The Receiver does not contend that this ground for appeal is moot.

**11.** Because we decline to decide this issue, we deny appellants' requests for judicial notice of facts purporting to establish the financial unreasonableness, and even scandalousness, of the JH sale. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir.1992) (appeals court may notice facts if they have a direct relation to matters at issue).

**12.** The SEC filed oppositions to the Investors' motions for leave to file deeds and to intervene, and to their motion to disqualify the Receiver.

**13.** This section provides, in relevant part:

A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

. . . .

10–day period commenced with Shaffer's temporary appointment as Receiver on September 2, 1993. That order was entered on September 10. The Receiver argues that the 10–day period commenced when his permanent appointment was entered on September 23. Shaffer made the § 754 filings on September 27.

■ No case addresses whether the 10–day period of § 754 commences after a temporary appointment, or only upon a permanent appointment. We need not reach this question. Even if Shaffer should have filed notice after his temporary appointment, his permanent appointment reestablished his jurisdiction, even before 10 days had elapsed from the entry of his temporary appointment. The entry of his permanent appointment order set a *new* 10–day period running. *See SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C.Cir.1996) (reappointment of receiver will start the ten-day clock of § 754 ticking anew). Further, appellants have not attempted to show prejudice from any late filing. *See United States v. Arizona Fuels Corp.*, 739 F.2d 455, 460 (9th Cir.1984).

We therefore conclude that Shaffer's filings on September 27, 1993, effectively maintained his jurisdiction over the properties.

### 2. Power to convey partnership assets

Appellants challenge the district court's assertion of jurisdiction to convey title to the three real properties owned in part by the limited partnerships in which the Investors had partnership interests. The district court twice addressed its jurisdiction to conduct a sale of partnership assets, first in the Sale Order and then in the Rule 60 Order. We address only its second, more considered ruling on this issue.[14]

■ Based on the minimum-contacts analysis of *Shaffer v. Heitner*, 433 U.S. 186, 208, 97 S.Ct. 2569, 2581–82, 53 L.Ed.2d 683

(1977), the district court found it had jurisdiction over the limited partners, the partnerships and their interests in property. It then concluded it had the power to include the partnership property in the Sale Order, based on *San Vicente*, 962 F.2d 1402.

In *San Vicente*, the district court ordered administrative expenses of an SEC receivership to be taxed to a limited partnership in which the receivership corporation was General Partner. The limited partners appealed, contending that the partnership agreement barred the General Partner from directing any such payments. In affirming, we rejected the limited partners' argument that the partnership agreement controlled under 28 U.S.C. § 959(b), which required the receiver to "manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." *Id.* at 1408.

We first observed that "[g]enerally, federal courts enjoy wide discretion in fashioning relief and protective measures in SEC actions...." *Id.* at 1406. We further held that the receivership order impliedly included not only the defendant corporation's property but also the limited partnership's property within the receivership estate. *Id.* at 1407. The district court had power to do so where there were sufficient contacts with the forum and notice and opportunity to participate. *Id.* at 1408.

Ultimately, we held that the receiver was *not* acting as the agent of the General Partner and thus required by § 959(b) to assume the General Partner's role and legal relationship to the limited partnership. *Id.* at 1409. Rather, the receiver was acting as an officer of the court who directly controlled the limited partnership's property under the authority of an equity receivership. *Id.*

---

Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 754.

**14.** In the Rule 60 Order, the district court abandoned its prior reliance on ACI's status as General Partner of the limited partnerships as a basis for its power to confirm the sale.

*San Vicente* supports the district court's exercise of jurisdiction in the case at bench. Appellants do not contest that there were minimum contacts between the forum and themselves, the partnerships, and the partnership property. Nor·do they contest that there was notice and an opportunity to be heard. Here, the appointment order gave the Receiver possession and control of all assets "belonging to or in the possession or control of ACI and its ... *affiliates.*" (Emphasis added.) The partnership assets clearly fell within the scope of this order. The Receiver was therefore "vested with *complete* jurisdiction and control of all such property...." 28 U.S.C. § 754 (emphasis added).

In selling the properties, the Receiver was exercising that "complete control." The Receiver was *not* acting as agent of ACI, the ousted General Partner. Consequently, neither the partnership agreement nor the California law of partnerships applies.[15] There is no conflict with § 959(b), just as there was none in *San Vicente.*

It is true that *San Vicente* did not involve the receiver's conveyance of title to partnership real property. Nonetheless, we conclude that the power of sale is within the scope of a receiver's "complete control" over receivership assets under § 754, a conclusion firmly rooted in the common law of equity receiverships.

First, we follow the oft-cited general principle that "the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Lincoln Thrift Ass'n,* 577 F.2d 600, 606 (9th Cir.1978). As we have previously stated:

> Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction."

*Reebok Int'l v. Marnatech Enter., Inc.,* 970 F.2d 552, 561–62 (9th Cir.1992) (quoting *Brown v. Swann,* 35 U.S. (10 Pet.) 497, 503, 9 L.Ed. 508 (1836)). Second, the leading treatise on the law of receiverships teaches:

> It is generally conceded that a court of equity having custody and control of property has power to order a sale of the same in its discretion. *The power of sale necessarily follows the power to take possession and control of and to preserve property,* resting in the sovereignty and exercised through courts of chancery, or courts having statutory power to make the sale.

2 *Clark on Receivers* § 482 (3d ed. 1992) (emphasis added) (citing *Shedd,* 121 U.S. at 87, 7 S.Ct. at 814). *Clark* also teaches that a receiver's sales do not even purport to convey "legal" title, but rather "good," equitable title enforced by an injunction against suit. *See* 2 *Clark on Receivers* §§ 342, 344, 482(a), 487, 489, 491.

> When a court of equity orders property in its custody to be sold, the court itself as vendor confirms the title in the purchaser. Neither the court nor [the receiver] gives a legal title to the purchaser because neither the court nor its officer has legal title to give.... A court of equity acts by a process of injunction against the owner and against the parties to the suit and protects the purchaser against interference and assures him a quiet title and quiet enjoyment.

*Id.* at § 487. *See also* 3 *Id.* § 920 ("When a receiver of a partnership sells property he sells as the arm of the court and not as holder of the legal title").

The JH sale thus was proper under the common law of equity receiverships and the reasoning of *San Vicente.* Appellants, however, make three, further arguments to the contrary.

First, they argue that the district court lacked the "full traditional *in rem* jurisdiction" necessary to transfer their property interests, noting that the district court in *San Vicente* exercised only *quasi in rem*

---

**15.** Although we conclude they have no legal significance, we judicially notice, pursuant to Fed. R.Evid. 201(d), the state-issued documents proffered by appellants to demonstrate that two of the limited partnerships were never lawfully formed.

jurisdiction in its order to tax costs. Appellants cite no authority for this alleged requirement.[16] Certainly, a decree in equity cannot transfer title outside the court's territorial jurisdiction. 2 *Clark on Receivers* § 482. Here, however, the Receiver's filings under § 754 extended the court's territorial jurisdiction to each district where the properties were located. *See Vision Communications,* 74 F.3d at 288–90. The argument is meritless.

We turn now to appellants' second and third arguments, which are related—that there is no federal common law of receiverships. Consequently, they argue, a receiver does no more than "step into the shoes" of the receivership defendant under state law and can convey no more title than the defendant possessed. For support, appellants rely on *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), in which the Court held that state law, rather than federal law, governs the imputation of corporate officers' knowledge of fraud to a corporation, where the FDIC, as receiver, is prosecuting the corporation's state causes of action. *Id.* at ———–———, 114 S.Ct. at 2052–53.

In declining to adopt a special federal rule of decision for imputation favorable to the FDIC, the Court first reaffirmed the unarguable proposition that "there is no federal general common law." *Id.* at ———, 114 S.Ct. at 2053 (quoting *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)). It then focused on the FDIC receivership statute, which provides that the FDIC shall "by operation of law, succeed to all rights, titles, powers, and privileges of the insured depository institution...." 12 U.S.C. § 1821(d)(2)(A)(i). "This language appears to indicate that the FDIC as receiver 'steps into the shoes' of the failed S & L" and is subject to any defense good against

the original party. *O'Melveny,* 512 U.S. at ———, 114 S.Ct. at 2054. In light of that specific statute, the Court found no basis for a common law rule of imputing fraud to a corporation. *See id.* at ———–———, 114 S.Ct. at 2055–56.

■ *O'Melveny* does not control the instant case. *O'Melveny* concerned only the rule which governs a receiver's prosecution of claims on behalf of the corporation under its control—a fact situation with absolutely no relevance to this case. *O'Melveny* does not question the existence of other federal common law rules regarding the powers of equity receiverships. Appellants' assertion that "there is no federal common law of receiverships" is thus vastly overstated. As discussed above, the powers of sale of federal equity receivers are well-established.[17]

We affirm the district court's jurisdiction and power as a federal equity receivership court to confirm the sale of the partnership assets.

**B. Orders issued while other Sale Orders were on appeal**

■■ Appellants contend that the JH sale is void because it closed on the basis of the Addendum and Transfer Orders, amending the terms of sale, which were themselves void for lack of jurisdiction. The district court issued the Addendum and Transfer Orders after the Ninth Circuit had dismissed the Sale Order and Rule 60 Order appeals, but before the mandate issued. Generally, the filing of a notice of appeal divests the district court of jurisdiction over the matters appealed. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 401–02, 74 L.Ed.2d 225 (1982). The issuance of a mandate terminates appellate jurisdiction. Fed. R.App. P. 41.

---

**16.** Indeed, the major treatise suggests the contrary. *See 2 Clark on Receivers* § 482 (a decree in chancery for conveyance in land has never been held to come within the principle of proceedings *in rem,* so far as to dispense with the service of process on a party); 1 *Clark on Receivers* § 47 (3rd ed. 1992) (receivership proceedings are *quasi in rem* ).

**17.** Appellants would also pose a conflict between the powers of sale of a federal equity receiver

and those of an equity receiver under state common law. To the contrary, however, both types of receivers can conduct a judicial sale of real property that is properly within their "possession and control" and within the court's territorial jurisdiction, where all parties of interest have been brought before the court. *See 2 Clark on Receivers* §§ 482, 491.

■ However, a district court may exercise residual jurisdiction over a continuing course of conduct in order to preserve the status quo. *Pyrodyne Corp. v. Pyrotronics Corp.,* 847 F.2d 1398, 1403 (9th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). Although it cannot adjudicate the substantial rights involved in the appeal, *id.,* where new facts are created by the parties, the maintenance of the status quo may require new action. *Hoffman v. Beer Drivers & Salesmen's Local Union 888,* 536 F.2d 1268, 1276 (9th Cir.1976).

In the case at bench, the Addendum Order: (1) confirmed a $250,000 sales price decrease that was a contingency in the original sales agreement; (2) extended the closing date following a campaign of extrajudicial interference by the Investors with the sale; and (3) clarified, but did not alter, the terms of the indemnification provision in the sales agreement. These actions were proper under *Hoffman* and *Pyrodyne. See Meinhold v. United States Dep't of Defense,* 34 F.3d 1469, 1480 n. 14 (9th Cir.1994) (order clarifying original injunction and supervising compliance is proper under *Hoffman* ); *The Sansom Comm. v. Lynn,* 735 F.2d 1552, 1554 (3rd Cir.) (extension of time to purchase properties under consent decree is proper under *Hoffman* ), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984). The Addendum Order did not materially alter the sale, but rather helped implement it.

The failure of appellants to gain a stay of the sale further supports the issuance of the Addendum and Transfer Orders to implement or enforce the earlier Sale Order. *See In re Grand Jury Subpoenas Duces Tecum,* 85 F.3d 372, 375–76 (8th Cir.1996) (district court retained power to enforce its earlier order notwithstanding appeal, under rule allowing jurisdiction to extent necessary to enforce a judgment not stayed). The Transfer Order's injunction barring the Investors from pursuing their property claims, except as against the receivership, embodies a routine means of quieting, that is, enforcing, the title conveyed in a receiver's sale. *See 2 Clark on Receivers* § 487.

We conclude that the Addendum and Transfer Orders were properly issued pursuant to the district court's residual, supervisory jurisdiction.

### C. Transfer Order

■ Appellants briefly, and without citation to authority, attack the merits of the Transfer Order.[18] We review permanent injunctive relief for an abuse of discretion. *United States v. Yacoubian,* 24 F.3d 1, 3 (9th Cir.1994).

■ Appellants argue that the injunction is: (1) in support of a void order; and (2) an improper exercise of control over property not within the court's *in rem* jurisdiction. As discussed above, appellants have not shown the transfer of their interests and claims to be void. Further, the power of the district court to enjoin proceedings relating to interests in the receivership entities, when necessary to achieve the purposes of the receivership, was established in *SEC v. Wencke,* 622 F.2d 1363, 1369 (9th Cir.1980).

Appellants' challenge to the Transfer Order fails.

### D. Due process

Appellants contend that the district court deprived them of property interests without due process of law, in that: (1) plenary, not summary, proceedings were required for the district court to deprive them of their interests in property; and (2) their remedy for the ACI fraud was unconscionably limited to recovery against the receivership estate.

■ We review *de novo* whether the district court's exercise of jurisdiction as a federal equity receivership court deprived appellants of property without due process of law. *See San Vicente,* 962 F.2d at 1406.

■ For the claims of nonparties to property claimed by receivers, summary proceedings satisfy due process so long as there is adequate notice and opportunity to be heard. *SEC v. Wencke,* 783 F.2d 829, 836–38 (9th

18. They also, again, attack the district court's jurisdiction. That argument has, however, already been dealt with above. The Transfer Order was within the district court's "broad powers and wide discretion to determine the appropriate relief in an equity receivership." *See Lincoln Thrift Ass'n,* 577 F.2d at 605–06.

Cir.), *cert. denied*, 479 U.S. 818, 107 S.Ct. 77, 93 L.Ed.2d 33 (1986); *see also SEC v. Universal Fin.*, 760 F.2d 1034, 1037 (9th Cir. 1985) (where investors had been afforded virtually all procedural protections which would have been available in plenary proceedings, and had notice of the nature of the proceedings, it was not improper for the district court summarily to adjudicate investors' claims to notes).

Appellants cite *Arizona Fuels Corp.*, 739 F.2d 455, for the proposition that, while summary proceedings are appropriate to determine the right to possession of receivership property, plenary actions must be filed to decide the ultimate rights to property. *See id.* at 458–59. However, *Arizona Fuels* did not present a situation involving the ultimate rights to property. *See id.* Therefore, statements in that decision purportedly requiring plenary actions are dicta. Moreover, *Arizona Fuels'* exception requiring plenary proceedings applies only to third parties *in possession* of the property. *See id.*

Even if plenary proceedings were appropriate, appellants can prove no due process violation without showing prejudice. *Wencke*, 783 F.2d at 837–38. Appellants must show how they were prejudiced by the summary proceedings and how they would have been better able to defend their interests in plenary proceedings. *Id.*

In the case at bench, the summary proceedings actually afforded to appellants gave them full notice and opportunity to be heard at every critical stage. Appellants have not even attempted to show prejudice arising from the nature of the proceedings.

Nor have appellants shown prejudice from their limited remedy to claims against the receivership estate. ACI's massive fraud left its investment ventures a mess of commingled funds, unrecorded deeds, and limited partnerships stranded in legal limbo. In response, the district court crafted a comprehensive equitable remedy to protect both creditors and investors. This remedy included the Equal Treatment Order, JH sale, and Transfer Order. *Cf. Official Cattle Contract Holders Comm. v. Commons (In re Tedlock Cattle Co.)*, 552 F.2d 1351, 1352–53 (9th Cir. 1977) (trustee of bankrupt Ponzi-scheme promoter's estate properly applied overriding federal law to apportion assets to all investors based on their shares of original investments).

Appellants have presented only one alternative to the district court's comprehensive scheme—their own last-minute purchase proposal, which the district court found financially dubious and inattentive to the needs of creditors. It rejected the Investors' proposal only after full briefing, a hearing, and post-hearing supplemental briefing. Although we have dismissed as moot the issue of whether the district court abused its discretion in rejecting this alternate proposal, the district court's consideration of the issue satisfied constitutional due process.

Appellants have established no due process violation in the district court's treatment of their property interests.

## V. CONCLUSION

We dismiss as moot appellants' challenge to the economic merits of the JH sale, and their contention that ACI's liquidation should have been handled in bankruptcy. On all other issues, we affirm the district court's four orders herein appealed.

**DISMISSED** in part, and **AFFIRMED** in part.

